OPINION OF THE COURT
 

 Simons, J.
 

 Family Court has found respondent parents responsible for the sexual abuse of two of the five children living in their home. Accordingly, it ordered all five children placed under the supervision of the Child Welfare Administration (CWA) of the petitioner Department of the Social Services for a period of 12 months. Petitioner established its case by presenting evidence that respondents "allowed” two of the children, while under their care, to contract chlamydia, a sexually transmitted disease. The issue presented is whether respondents satisfactorily rebutted petitioner’s prima facie case that they were legally answerable for the children’s condition.
 

 I.
 

 Respondents are the parents of four children, Philip, Jacob, Brandon, and Belit, 15, 12, 8, and 5 years of age respectively. The children lived with respondents in a three-bedroom home which the parents have maintained for the last several years. Angel, age 9, a nephew of the mother, also lived with them. In 1989, at the request of petitioner, respondents took Angel’s
 
 *241
 
 sister and brothers, Cathy, Wilfredo and Alfredo, into their home.
 

 During April or May of 1990, Belit’s mother observed Alfredo, then six years old, lying on top of Belit. Both were naked below the waist. As a result she insisted that petitioner remove Alfredo, Wilfredo and Cathy. Seven months later she observed a discharge from Belit’s vagina and sought medical treatment for her and advice from a consultation center. As a result, the incident was reported to petitioner and in April 1991, following an investigation, petitioner instituted this proceeding charging respondents with sexual abuse. Petitioner alleged that while in the sole care of respondents Belit had been vaginally penetrated and her hymen broken and that Philip, Brandon and Belit had tested positive for chlamydia.
 

 At a fact-finding hearing before Family Court, petitioner presented two witnesses, Mr. Mendez, a social worker employed by the CWA, and Ms. Harrison, a pediatric nurse practitioner at Montefiore Medical Center. Mr. Mendez testified that he could learn little about how the disease was contracted during his investigation of the family. Respondents denied any knowledge of sexual abuse and although Belit eventually told him that she had been touched in the vagina by a "little kid” in a park near her home, the children gave him no explanation of how the abuse had occurred. The CWA requested respondents to have all the children tested for sexually transmitted disease. Belit was tested by Ms. Harrison at Montefiore Medical Center in December 1990 and the four boys were tested several weeks later. Ms. Harrison also made appointments to test Alfredo, Wilfredo and Cathy. They were living with their grandmother at the time, however, and respondents did not produce them for testing.
 

 Ms. Harrison testified that the initial physical examination of Belit revealed that Belit’s hymen was irregular and bled when touched. Tests done that day showed that Belit was infected with chlamydia in her vagina. Ms. Harrison testified that Belit told her she had been "bad touched”, but would not identify the incident or the person who touched her. Respondents were provided with a prescription for Belit, and at a February 15, 1991 follow-up examination, she tested negative for chlamydia.
 

 Ms. Harrison also examined the four boys. Brandon and Philip both tested positive for chlamydia in their rectal area but neither offered any explanation for the source of their
 
 *242
 
 infections. The test results for Jacob and Angel were negative. Ms. Harrison concluded that Belit and Brandon had been the victims of sexual abuse, but made no determination about Philip. He may have been a victim she said but, because of his age, he also could have acquired the disease through consensual sexual activity.
 

 Both parents testified. They admitted that they alone were responsible for the care of the children but, other than conjecture, offered no explanation for how Belit had been injured or how the children had become infected. They also testified that they did not believe the positive test results for Brandon and Philip. Indeed, because they did not believe them, they had not given either Brandon or Philip the medication Ms. Harrison prescribed for the boys. Nor did they take either boy to a scheduled follow-up examination at Montefiore Medical Center. Instead, in March 1991, some two months after the initial examination, respondents had Philip and Brandon retested for chlamydia at another hospital. On the second examination the boys tested negative. Respondents offered no explanation for not believing the earlier positive test results or the possible source of the disease. They simply maintained that the earlier test results were incorrect. Respondents did not have themselves tested for chlamydia until March and April of 1991.
 

 The record contains some evidence of a possible source for Belit’s injury. There were the accounts of Belit and her mother of the incident in the park in which, as Belit said, an unidentified boy touched her vagina or, as her mother testified at the hearing, touched Belit outside her clothing. There was also evidence of Belit’s contact with Alfredo after he came to live with respondent in October 1989. Alfredo’s sister, Cathy, told Mr. Mendez that during the time they lived with respondents she saw Alfredo touching Belit on two occasions, once in the living room and once in the bedroom. One of these was the incident Belit’s mother observed in April of 1990, when she saw Alfredo lying on top of Belit. Alfredo admitted to Mr. Mendez that he had touched Belit’s vagina with his hand once when Cathy was present and Mr. Mendez confirmed that Department records indicated that Alfredo had been sexually abused while in a foster home and that while living with respondents he apparently had asked both Belit and Cathy to have sex with him.
 

 The children’s mother testified that she had Wilfredo, Alfredo and Cathy moved to their grandmother’s home immedi
 
 *243
 
 ately after witnessing the incident between Belit and Alfredo. Some seven months later, respondents noticed a vaginal discharge from Belit, which ultimately proved to be a symptom of chlamydia, and led to this proceeding.
 

 Family Court found that petitioner had established injury to the children while under respondents’ care and it had, therefore, established a prima facie case of child abuse under article 10 of the Family Court Act. It also found that respondents’ explanation for the source of injuries failed to rebut petitioner’s prima facie case. Accordingly, the court ordered the children released to respondents under CWA supervision for 12 months, during which time the parents were to seek counseling with their children. The Appellate Division confirmed the factual findings of Family Court and affirmed its order. We agree with the result reached by the Appellate Division but not with its view that once a prima facie case of child abuse had been established under the statute, the "burden of proof’ shifted to respondents, who were then required to provide a " 'reasonable and adequate explanation of how the injuries were sustained’ ”
 
 (Matter of Philip M.,
 
 186 AD2d 462, 463).
 

 II.
 

 Historically, it has been difficult to prove acts of sexual abuse involving young children because such acts "are predominantly nonviolent and usually occur in secret” making it difficult to acquire evidence fixing blame
 
 (Matter of Nicole V.,
 
 71 NY2d 112, 117). Article 10 was enacted to alleviate these difficulties
 
 (Matter of Christina F. [Gary F.J
 
 74 NY2d 532, 535). It defines an "abused child” as a child under the age of 18 whose parent or other person legally responsible for the child’s care "commits, or allows to be committed, a sex offense against such child” (Family Ct Act § 1012 [e] [iii]). Section 1046 (a) (ii) provides that a prima facie case of child abuse or neglect may be established by evidence of (1) an injury to a child which would ordinarily not occur absent an act or omission of respondents, and (2) that respondents were the caretakers of the child at the time the injury occurred. Unexplained sexually transmitted disease in a child is evidence of sexual abuse
 
 (see, Matter of Tania J.,
 
 147 AD2d 252, 259).
 

 The statute is fault based. There must be evidence of child abuse and petitioner must establish it by "a preponderance of the evidence” (Family Ct Act § 1046 [b] [i];
 
 and see, Matter of
 
 
 *244
 

 Tammie Z.,
 
 66 NY2d 1). The application of the statute, however, permits a finding of abuse or neglect based upon evidence of an injury to a child which would ordinarily not occur absent acts or omissions of the responsible caretaker. It authorizes a method of proof which is closely analogous to the negligence rule of res ipso loquitur
 
 (see, Dermatossian v New York City Tr. Auth.,
 
 67 NY2d 219, 226;
 
 Plumb v Richmond Light & R. R. Co.,
 
 233 NY 285;
 
 see also, 2
 
 McCormick, Evidence § 342, at 451 [Practitioner’s 4th ed 1992]). Indeed, the statute is modeled on the res ipso loquitur doctrine
 
 (see, Matter of S,
 
 46 Misc 2d 161, 162;
 
 Matter of Roman,
 
 94 Misc 2d 796, 801-802).
 

 As in negligence cases tried on the theory of res ipso loquitur, once a petitioner in a child abuse case has established a prima facie case, the burden of going forward shifts to respondents to rebut the evidence of parental culpability. But contrary to the statement of the Appellate Division, the burden of proving child abuse always rests with petitioner; "[s]hifting the burden of explanation or of going on with the case does not shift the burden of proof’
 
 (Plumb v Richmond Light & R. R. Co.,
 
 233 NY, at 288). It is sometimes said that once a prima facie case is established a "presumption” of parental responsibility for child sexual abuse arises but this refers to a presumption which is "evidentiary and rebuttable, whether by [respondent’s] own testimony or by any other evidence in the case”
 
 (People v Leyva,
 
 38 NY2d 160, 167;
 
 see also, Dermatossian, supra,
 
 at 226). While the fact finder may find respondents accountable for sexually abusing a child or allowing sexual abuse to occur after a prima facie case is established, it is never required to do so
 
 (cf., Dermatossian, supra,
 
 at 226).
 

 Once a prima facie case has been established, respondents may simply rest without attempting to rebut the presumption and permit the court to decide the case on the strength of petitioner’s evidence or, alternatively, they may present evidence which challenges the establishment of the prima facie case. Their evidence may, for example, (1) establish that during the time period when the child was injured, the child was not in respondent’s care
 
 (see, e.g., Matter of Vincent M.,
 
 193 AD2d 398, 403); (2) demonstrate that the injury or condition could reasonably have occurred accidentally, without the acts or omissions of respondent
 
 (see, e.g., Matter of Eric G.,
 
 99 AD2d 835); or (3) counter the evidence that the child had the condition which was the basis for
 
 *245
 
 the finding of injury
 
 (see, e.g., Matter of Smith,
 
 128 AD2d 784, 785-786).
 

 III.
 

 In this case, respondents conceded that they were responsible for the children’s care and they did not challenge the finding that Belit had been abused and had contracted chlamydia. To defeat petitioner’s prima facie case, they relied principally on evidence that Belit’s injury had another source.
 

 Family Court found respondents’ explanations "insufficient” to overcome petitioner’s prima facie case. Insofar as the incident in the park was concerned, the boy was not identified and there was no reason to presume he was infected with chlamydia or that he transmitted the disease to Belit during the encounter. Moreover, the versions of Belit and her mother differed on whether the boy had touched Belit over her clothing or not. Family Court accepted the mother’s version and since chlamydia could not be communicated in this way, it rejected the park incident as the source of Belit’s injury.
 

 The incident with Alfredo presented a closer question. Alfredo’s contacts with Belit were witnessed by Cathy and Belit’s mother and confirmed by Alfredo. Moreover, Alfredo apparently had a history of emotional and sexual abuse when he came to live with them, although respondents were unaware of it at the time and had no reason to take precautions to prevent Belit’s injury. The evidence is not persuasive, however, that he caused Belit’s infection. Considering that Alfredo was never tested for chlamydia to determine if he was the source, that Belit’s symptoms of chlamydia did not manifest themselves until seven months after Alfredo was removed from respondents’ home and that no evidence before the court showed Alfredo penetrated Belit, the court cannot be faulted for rejecting Alfredo as a source of injury. Indeed, respondents did not advance the theory that Alfredo had infected Belit when the injury to her hymen was discovered or when the chlamydia was diagnosed. It was not until these proceedings were initiated that they suggested those possibilities.
 

 Furthermore, respondents failed to present any evidence to rebut Brandon’s injury or to explain why some of their children were infected with the disease but not others. Though they did not accept the positive test results from Montefiore Medical Center, they produced no evidence that the first test was flawed or that the second test, in which Brandon and
 
 *246
 
 Philip tested negative, was more reliable. Their simple refusal to believe the results of a medical test did little to counter petitioner’s prima facie case, particularly when they accepted the Montefiore test results for Belit, Jacob and Angel without challenging the test’s accuracy or reliability.
 

 IV.
 

 Respondents fault this assessment of their defense, claiming that the trial court’s insistence that they present evidence to support their explanations changed the burden of proof. They assert that such a procedure places reasonable, prudent, and caring parents lacking knowledge of how their child has become injured, in an impossible position because, by application of the statute, they may become the subject of coercive intrusion into their family life by the Department of Social Services.
 

 Section 1046 (a) (ii) of the Family Court Act attempts to strike a fair and reasonable balance between a parent’s right to care for a child and the child’s right to be free from harm. The establishment of a prima facie case does not require the court to find that the parents were culpable; it merely establishes a rebuttable presumption of parental culpability which the court may or may not accept based upon all the evidence in the record. Before relying upon its provisions, the court should consider such factors as the strength of the prima facie case and the credibility of the witnesses testifying in support of it, the nature of the injury, the age of the child, relevant medical or scientific evidence and the reasonableness of the caretaker’s explanation in light of all the circumstances. In weighing the caretaker’s explanation, the court may consider the inferences reasonably drawn from his or her actions upon learning of the injury. Certainly, the caretaker’s failure to offer any explanation for the child’s injuries, to treat the child, or to show how future injury could be prevented are factors to be considered by the court, for they reflect not only upon the caretaker’s fault and competence but also the strength of the caretaker’s rebuttal evidence.
 

 In this case, respondents appear to have acted responsibly concerning Belit’s treatment, but they failed for reasons not sufficiently explained, to take steps which could assist in fixing the cause of the injuries or to insure that they were not repeated. For example, they waited three months after Belit, Brandon and Philip had tested positive for chlamydia, before
 
 *247
 
 they had themselves tested for chlamydia and, apparently believing Alfredo to be the source of the infection, they nevertheless failed to have him tested. Moreover, they failed to give Philip and Brandon the medicine provided by nurse Harrison and they waited some two months before having them retested for chlamydia. Even if respondents doubted the accuracy of the tests performed by Ms. Harrison, they needlessly exposed their own children to harm by allowing two months to go by without taking any action to treat or retest Philip and Brandon. While no one of these facts is dispositive, once a prima facie case had been established, Family Court was entitled to consider all of them when determining respondents allowed the children to be abused.
 

 Accordingly, the Appellate Division order in this case should be affirmed, without costs.
 

 Chief Judge Kaye and Judges Titone,. Hancock, Jr., Bellacosa, Smith and Levine concur.
 

 Order affirmed, without costs.