■ In the Matter of ERIC CC. and Another, Alleged to be Abused and Neglected Children. FULTON COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; ERIC EE., Appellant. (And Another Related Proceeding.) [653 NYS2d 983] —Spain, J. Appeals (1) from two orders of the Family Court of Fulton County (Jung, J.), entered January 16, 1996 and January 22, 1996, which granted petitioner's applications, in two proceedings pursuant to Family Court Act article 10, to adjudicate respondents' children to be abused and/or neglected, and (2) from two orders of said court, entered January 16, 1996 and January 22, 1996, which issued two orders of protection.

On May 18, 1995 petitioner filed separate petitions pursuant to Family Court Act article 10 alleging that respondents abused and neglected their six-week-old son and one-year-old daughter. Respondent Eric EE. (hereinafter the father) and respondent Elizabeth CC. (hereinafter the mother) are the parents of Eric CC. (born in 1995) and Tiffany CC. (born in 1994). The petitions were based upon allegations that Eric suffered numerous fractured ribs and other bones which were considered to be life-threatening injuries; further, the petitions alleged that, based upon the injuries to Eric, Tiffany was placed at risk of serious harm.

The record reveals that during Eric's delivery the umbilical cord became wrapped around his neck and the obstetrician was required to assist the child through the birthing process; there were no further complications and the mother and Eric were discharged from the hospital two days later. At all times herein relevant Eric was in the care of his mother, his father or his paternal grandmother. On April 30, 1995 the mother took Eric to Nathan Littauer Hospital where he was diagnosed with rhinitis; chest X rays taken at this hospital visit were negative. On May 14, 1995, in response to the father's report that Eric had stopped breathing, respondents again took Eric to Nathan Littauer Hospital; while waiting to be examined respondents decided to take Eric to Amsterdam Memorial Hospital. After an initial examination Eric was diagnosed with rhinitis and an upper-respiratory infection; respondents were then informed that Eric could return home. Respondents resisted the attempt to send Eric home, fearing a recurrence of the breathing difficulty, and Eric was subsequently admitted to Amsterdam Memorial Hospital. Thereafter a radiologist noticed that there were fractures of the anterior ribs bilaterally; skeletal surveys were ordered and revealed numerous fractures.

The petitions allege:

"Eric * * * suffered fractures to the left radius, left ulna, left distal femur and right proximal tibia and multiple fractures of the anterior ribs which caused or created a substantial risk of death or serious injury.

"As a result of the nature of the injuries to Eric * * * and upon information and belief said child Tiffany * * * was at risk of serious harm."

Thereafter, a lengthy fact-finding hearing was held. Petitioner offered the testimony of a child-protective worker, an investigator with the Sheriff's Department, the mother's obstetrician, an orthopedic surgeon, a pathologist, a radiologist and a pediatrician specializing in genetics. Respondents testified on their own behalf and also presented the testimony of a pediatric geneticist/physician who evaluates and attends to children with birth defects and genetic diseases. Respondents testified that Eric's injuries may have resulted from complications at birth or the manner in which the hospital staff placed Eric in a piggostat device used to hold him stationary while X rays were taken; the pediatric geneticist opined that there was "compelling evidence that [Eric] had temporary brittle bone disease" resulting from "intrauterine confinement" and that intentionally inflicted injuries to Eric were "highly unlikely".

After the hearing, Family Court determined that petitioner "met its initial burden by proving serious injuries to the child that occurred during his first few weeks of life". Family Court discounted the theory of "temporary brittle bone disease" and determined that Eric did not match the profile of children who suffer from said disease. The court found that respondents' testimony was "not truthful" and that they had caused Eric's injuries. In separate orders, Family Court determined that respondents had abused Eric and neglected Tiffany; additionally, separate orders of protection were issued against the father and the mother. Respondents appeal each of the orders.

We affirm. In our view the evidence presented by petitioner of Eric's numerous fractures constituted strong prima facie proof of child abuse and neglect (see, Family Ct Act § 1012 [e] [i]; [f] [i]). The severe injuries Eric suffered, when coupled with his age, amply established that the injuries were ones which "ordinarily would not have occurred absent an act or omission of the parent[s] or person[s] legally responsible for the child's care" (Matter of Austin JJ., 232 AD2d 736, 737; see, Family Ct Act § 1046 [a] [ii]). Further, contrary to respondents' contention, the evidence presented by respondents was not sufficient to rebut the statutory presumption (see, Matter of Philip M., 82 NY2d 238; Matter of Julissa II., 217 AD2d 743, 744).

Barbara Wolf, a pathologist called on behalf of petitioner, testified that there were indications from the location and profile of the fractures that they were caused by "blunt-force trauma". Wolf further testified that the fractures were caused by "pulling" and "squeezing", indicating that a great deal of force was needed to cause an infant's bones to break and that respondents failed to offer any reasonable explanation. Further, Wolf took exception with the reliance by respondents' expert on temporary brittle bone disease; she described the disease as a postulate which is not widely accepted by the medical community and which lacks biomedical or scientific support.

Wolf's testimony was corroborated by Carlton Phelps, a radiologist also called on behalf of petitioner, who opined that the fractures to the child's extremities "are fairly specific for the type of trauma that results from pulling, particularly pulling on limbs, twisting * * * . It has to be a fairly hard yank because children are actually quite durable." Both experts noted that the trauma diagnosed was commonly associated with battered child syndrome and their testimony was further corroborated by Ian Porter, a pediatrician and genetics specialist. Family Court's conclusion that respondents failed in their attempt to rebut evidence of their personal culpability by introducing evidence of "temporary brittle bone disease" is supported in the record; furthermore, even if "temporary brittle bone disease" was not so speculative, its application to the trauma in this case is questionable.

Family Court relied heavily on the testimony of petitioner's experts and it is well settled that Family Court is best situated to determine the credibility of witnesses (see, Matter of Campbell v Cucci, 234 AD2d 802; Matter of Shaun X., 228 AD2d 730; Matter of Esther CC., 194 AD2d 949). We find no reason to disturb Family Court's determination, which is clearly supported by a preponderance of the evidence (see, Matter of Shaun X., supra; Matter of Julissa II., supra; see also, Family Ct Act § 1046 [b] [i]). Finally, in view of the nature and extent of the injuries sustained by Eric, Family Court properly found that Tiffany is a neglected child (see, Family Ct Act § 1046 [a] [i]).

We have reviewed respondents' remaining contention that Family Court erred by relying upon proof outside the record and find it lacking in merit.

Mercure, J. P., White, Casey and Peters, JJ., concur. Ordered that the orders are affirmed, without costs.