■ In the Matter of CAMARA R., and Others, Children Alleged to be Neglected. DELAWARE COUNTY DEPARTMENT OF SOCIAL SERVICES, Appellant; ROBERT S. et al., Respondents. [693 NYS2d 681] —Spain, J. Appeal from an order of the Family Court of Delaware County (Estes, J.), entered August 25, 1998, which dismissed petitioner's application, in a proceeding pursuant to Family Court Act article 10, to adjudicate respondents' children to be neglected.

The baby at the center of this neglect proceeding is Antonio (born in 1997) (hereinafter the baby), the youngest of respondents' three infant children, the oldest of which was born in 1995. In early 1998, the baby was twice diagnosed with, and hospitalized for, nonorganic failure to thrive, having failed to adequately gain weight. On February 13, 1998 at the time of his first admission to the hospital at the age of 2 months, he weighed 7 pounds, 6½ ounces, which was less than his birth weight. He steadily gained weight with regular feeding and medication and, at his discharge five days later, he weighed 9 pounds, 2 ounces, a weight increase of 1 pound, 11½ ounces. Notably, hospital records indicate that the baby was scheduled to be discharged on February 17th, but the hospital was unable to contact the parents. The nurses' notes also reflect that, at the February 18, 1998 discharge, the parents were given instructions on medication, how to hold, feed and burp the child, and respondents were "uninterested", the father stating that he "knew how to feed [the] baby".

On the day of the baby's discharge, the hospital made a referral to the public health nurse assigned to the family to make home visits to the baby. On that same day, when the nurse contacted the mother, she refused home nursing services. Almost three weeks later when the nurse accompanied the child protective workers on a home visit, the nurse found the

apartment unclean, cluttered with dirty clothes and dirty dishes, the family was upset and the father was yelling at the nurse and pointing his finger at her. The nurse described the baby as skinny with a round belly and weighing 9 pounds and ½ ounce, a decrease from his hospital discharge weight.

On March 15, 1998, after the execution of a search warrant by local police, the father was arrested at home for having marihuana in the bedroom shared with the baby. The baby was observed by the police and social worker as being in poor health and was brought to the emergency room and later admitted to the hospital with a diagnosis of failure to thrive; he looked "malnourished" at a weight of 8 pounds, 14 ounces, which was 4 ounces less than his weight at the time of the discharge approximately one month earlier. He also had a severe diaper rash such that his bottom was "almost raw". The intake records also report that, according to the mother, the baby's immunizations were not up to date.

The baby's physician indicated that he gained weight "rapidly" and "nicely" during that second hospitalization. The nurses' notes indicate that although the mother had been instructed during his first hospitalization to feed him on a regular schedule, she reported during the second hospitalization that she had not awakened him to feed him during the night. On April 8, 1998, after four days of observing and coaching the mother as she interacted with the baby, the baby was released from the hospital to the parents at a weight of 12 pounds, 11 ounces, an increase in just over three weeks of 3 pounds, 13 ounces.

On March 17, 1998, during the baby's second hospitalization, petitioner commenced this proceeding against the parents alleging that all three children were neglected because of unsafe and unsanitary living conditions, the father's excessive consumption of alcohol and the baby's failure to thrive. Family Court held a fact-finding hearing. Following the close of petitioner's case the parents moved to dismiss the petition. Family Court dismissed the petition finding that petitioner failed to establish a prima facie case of neglect. Petitioner appeals.

We reverse. Upon a careful review of the record, we conclude that petitioner met its burden of establishing a prima facie case of neglect with respect to the baby. A neglected child is a child "whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his parent * * * to exercise a minimum degree of care (A) in supplying the child with adequate food,

clothing, [or] shelter * * * or (B) in providing the child with proper supervision or guardianship" (Family Ct Act § 1012 [f] [i]). Proof of the child's condition or injuries "of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent" constitutes prima facie evidence of neglect by the parent (Family Ct Act § 1046 [a] [ii]). Moreover, proof that a parent repeatedly misuses a drug or drugs or alcoholic beverages which "has or would ordinarily have the effect of producing in the user thereof a substantial state of stupor, unconsciousness, intoxication * * * or a substantial impairment of judgment" constitutes prima facie evidence of neglect of that person's child (Family Ct Act § 1046 [a] [iii]). While the burden of proving abuse or neglect always rests with petitioner, upon a motion to Family Court to dismiss a Family Court Act article 10 petition at the close of petitioner's case, "the proper inquiry [is] whether petitioner ha[s] made out a prima facie case, thereby shifting the burden to respondents to rebut the evidence of parental culpability" (Matter of Colleen CC., 232 AD2d 787, 789; see, Matter of Philip M. [Lorene P.], 82 NY2d 238, 244).

Here, the baby was twice within one month diagnosed with nonorganic failure to thrive requiring hospitalizations. While in the hospital both times he steadily gained weight. Between hospitalizations he lost weight despite being on a medication used to control what his physician described as a mild case of reflux disease, which could have been a factor in, but was not the cause of, the baby's failure to thrive. According to that physician, the major cause of the baby's failure to gain weight was that the baby was "not getting enough to eat".

In our view, there is ample evidence in the record to attribute the baby's failure to thrive to "the unwillingness or inability of the respondent[s] to exercise a minimum degree of care" for the baby (Family Ct Act § 1046 [a] [viii]). Taking the totality of the evidence in the record, including the physical condition of the baby, the remarkable improvement in his weight during hospitalization, the parents' hostility toward and resistance to instructions from hospital staff and assistance from home health professionals, especially during the critical period after the first hospitalization, together with the evidence of the uncleanliness and unkemptness of the house and the father's untreated alcohol abuse, petitioner established a prima facie case that, at the time the neglect petition was filed, the baby's failure to thrive was a consequence of the parents' failure to properly feed him. The progress in the child between his second discharge from the hospital on April 18,

1998 and the final day of the fact-finding hearing on August 21, 1998 cannot negate the fact that a prima facie case of neglect was established. Family Court's erroneous dismissal at the close of petitioner's proof "had the effect of depriving petitioner of an opportunity to cross-examine respondents, if they chose to testify, or, if they did not [choose to testify], the benefit of the strongest inference against them that the opposing evidence permitted" (*Matter of Colleen CC., supra,* at 789).

As to the baby's siblings, we further conclude that a prima facie case of derivative neglect was established (*see,* Family Ct Act § 1046 [a] [i]; *see also, Matter of Tabatha WW.,* 260 AD2d 669).

Finally, we reject the Law Guardian's suggestion that we treat Family Court's dismissal as the equivalent of a determination that Family Court's assistance was no longer required (*see,* Family Ct Act § 1051 [c]) as Family Court did not address that option or make that determination.

Accordingly, the petition should be reinstated and the matter remitted for the completion of the fact-finding hearing.

Peters, J. P., Carpinello and Graffeo, JJ., concur. Ordered that the order is reversed, on the law, without costs, petition reinstated and matter remitted to the Family Court of Delaware County for further proceedings not inconsistent with this Court's decision.