(August 16, 2001)

■ In the Matter of PATRICK GG. and Others, Children Alleged to be Abused and/or Neglected. MONTGOMERY COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; VICKY GG., Appellant. [729 NYS2d 215] —Peters, J. Appeal from an order of the Family Court of Montgomery County (Going, J.), entered June 13, 2000, which partially granted petitioner's application, in a proceeding pursuant to Family Court Act article 10, and adjudicated respondent's children to be neglected.

On May 25, 1999, petitioner filed an application seeking the temporary removal of Martin GG. (born in 1988), Patrick GG. (born in 1989) and Caroline GG. (born in 1994) from the care of respondent. The application was granted and a petition dated May 27, 1999 followed, alleging that respondent had abused and neglected the aforementioned children. Such petition was grounded upon a diagnosis made by Chris Kjolhede, a pediatrician at Bassett Hospital in the Village of Cooperstown, Otsego County, that Caroline was a victim of Munchausen's syndrome by proxy (hereinafter MSP), a condition whereby a parent or caretaker fabricates or deliberately induces medical illnesses or conditions to be suffered by his or her child.[1] After a fact-finding hearing, Family Court agreed. In our view, the evidence adduced at the fact-finding hearing is insufficient to sustain the conclusion reached by Family Court.

Kjolhede testified that he first treated Caroline when respondent brought her to Bassett Hospital in May 1999 complaining of bilious vomiting for the previous 24 hours. Kjolhede reviewed her medical history which disclosed that since two years of age, she had been admitted to various hospitals with symptoms of hypoglycemia and diarrhea, yet no medical provider had been able to give a definitive diagnosis to explain her condition. Upon this basis, he admitted her to the hospital based upon his suspicion that the child was a victim of MSP.

---

1. MSP is a variant of Munchausen syndrome, a psychiatric condition which is defined as follows: "the feigning of symptoms or a disease or injury in order to undergo diagnostic tests, hospitalization, or medical or surgical treatment" (Webster's Medical Desk Dictionary [1st ed 1986]).

Kjolhede further testified regarding his understanding of the criteria relevant to a diagnosis of MSP: multiple unexplained medical illnesses, frequent presentation for medical care to multiple providers, multiple medical procedures upon the child, the denial by the patient's parent or caretaker of any knowledge regarding what caused the illness, and the abatement of the child's symptoms when the parent or caretaker is absent. In the absence of any evidence that the symptoms of hypoglycemia were caused by a rare insulin-secreting tumor, Kjolhede opined that the cause was most likely an external agent such as insulin which he suspected was available to respondent since her mother was a diabetic and was receiving both insulin and oral hypoglycemic agents. Kjolhede testified that all of the aforementioned factors were demonstrated here, including the abatement of the child's symptoms on each of the two separate occasions that he examined her after her release from the hospital. On cross-examination, however, Kjolhede acknowledged that Caroline was the first patient that he had ever diagnosed with MSP and, never having seen a case or formally studied the syndrome, his knowledge was limited to information gleaned from medical texts and journals. He conceded that despite being aware that Peter Liljeberg had been Caroline's treating physician from the time of her infancy, he did not speak with Liljeberg prior to making his diagnosis. Moreover, he admitted that, despite his finding of a severe rash on the child's buttocks while she was in foster care which would indicate a recurrence of diarrhea, he failed to fully investigate the issue with the foster parents.

Liljeberg explained that Caroline has been seen by a pediatric gastroenterologist, James Betzhold, since 1996. Betzhold assessed her as suffering from idiopathic hypoglycemia which is hypoglycemia of unknown causes, possibly related to a decreased nutritional intake; yet, when the hospital performed a monitored fast in 1996, she did not develop low blood sugar levels. Betzhold recommended a lactose-free diet while Liljeberg made numerous other dietary recommendations. Tests performed in 1997 at Betzhold's request finally revealed that the child suffered from Giardia lamblia[2] —a condition which could cause diarrhea and symptoms of hypoglycemia. Betzhold maintained, according to Lilje-

---

2. Giardia is "[a] genus of protozoa processing flagella * * * [which] inhabit the small intestine of humans and * * * attach themselves to the cells of the intestinal mucosa, from which they absorb nourishment" (Taber's Cyclopedic Medical Dictionary [19th ed 2001]). Giardia lamblia is a "species of Giardia * * * transmitted by ingestion of * * * fecally contaminated water or food. * * * The most common symptoms * * * are diarrhea, fever,

*(n. cont'd)*

berg, that MSP was not a factor in 1997 since the child continued to have diarrhea while in the hospital. During the 1999 hospitalization, however, Liljeberg began to suspect a MSP diagnosis, yet explained that Betzhold wanted to pursue at least one more medical test for Giardia lamblia to determine whether it reappeared, despite prior treatment, to explain the symptoms observed. Liljeberg did not find respondent's affect to be inappropriate at any time during the five years that he treated this child.

Polly Bennett, a Montgomery County caseworker assigned to investigate the allegations against respondent, testified that the child's older brothers—one a third grader and another a fifth grader—informed her that they had observed respondent crushing pills with a fork or opening capsules to put in Caroline's food or drink. Bennett stated that respondent denied crushing pills with a fork, yet admitted to having split open some type of herbal capsule to mix into the child's food. No further investigation ensued.

Mila Failing, the children's foster parent from May 1999 through December 1999, did not report to Kjolhede that the child still suffered from bouts of diarrhea. She further stated that while in her care, the child did not display the hallmark symptoms of hypoglycemia. Ann Gugliemelli, the child's foster parent from December 1999 to March 2000, agreed.

The testimony of Yolanda Valez and Barbara Citron, two employees of Centro Civico, the site of respondent's supervised visits with her children after their removal, directly contradicted the observations of the foster parents that the symptoms of hypoglycemia abated after the child's removal. Similarly, Beth Close, Caroline's special education teacher after removal, observed her to still suffer from diarrhea. Close referred the child to occupational therapist Joan Dise, who concluded that because of the child's difficulty in chewing solids, she was not receiving the full nutritive value of her food.

Respondent confirmed that she has had no form of visitation or communication with her mother since Caroline was one month old, thus undermining Kjolhede's speculation that insulin was readily available to her; this testimony was uncontroverted. She recounted an occasion during the summer of 1997 when she observed the child exhibiting symptoms of hypoglycemia which prompted Caroline's admission to Albany

---

cramps, anorexia, nausea, weakness, weight loss, abdominal distention, flatulence, greasy stools, belching, and vomiting. Onset of symptoms begins about 2 weeks after exposure; the disease may persist for up to 2 to 3 months" (*id.*).

Medical Center where it was recognized that her glucose level was dangerously low. Following her release after a week of testing, respondent was given a machine to monitor Caroline's blood sugar levels.

In addition to following recommendations made by the various medical providers, respondent sought help from Thomas Mather, a homeopath, recommended by her boss at the farm where she was employed. His treatment commenced in January 1998 and included the use of the "pill" which respondent was observed to have placed in her daughter's food or drink. Mather opined that the child's condition was due to an untreated yeast infection which could have been medically assessed had Kjolhede returned his calls and heeded his advice to test for such condition. He further opined that children with yeast infections have symptoms of hypoglycemia which usually recede when the underlying yeast infection abates.

Upon the advice of a visiting nurse assigned to monitor Caroline's condition, respondent took her to a hospital in May 1999 to undergo a sweat test to determine whether she suffered from cystic fibrosis. After the child's severe allergic reaction to the test, which included excessive vomiting, she was taken to the emergency room at Bassett Hospital where she was ultimately diagnosed with MSP by Kjolhede.

Ruling from the bench at the close of the fact-finding hearing, Family Court declared, contrary to the order upon which this appeal is based, that all three of respondent's children were neglected and that the youngest child, Caroline, was both abused and neglected. In its brief oral decision, the court stated that the "child thrives when not exposed to the care of [respondent], and does not thrive when exposed to [respondent]." Respondent appeals from the order entered June 13, 2000,[3] contending that petitioner failed to sustain its burden of establishing, by a preponderance of the evidence (*see,* Family Ct Act § 1046 [b] [i]), that her three children were neglected within the meaning of Family Court Act § 1012 (f) (i) (B).

Acts of child abuse or neglect alleged to have resulted from a parent or caretaker's MSP are unlikely, by their very nature, to be witnessed by a third party (*see, Matter of Aaron S.,* 163 Misc 2d 967, 971, *affd sub nom. Matter of Suffolk County Dept. of Social Servs. [Aaron S.],* 215 AD2d 395) and, thus, in the absence of surreptitious videotaping, "require a res ipsa loquitur type of analysis, where the circumstantial evidence is

---

**3.** Petitioner has informed this Court that it would not be submitting a brief on appeal, preferring instead to rely on the decision of Family Court. Under the circumstances herein, we do not condone such practice.

cumulative and the dramatic abatement of illness upon removal from the parent speaks for itself" (*id.*, at 971; *see, Matter of Jessica Z.*, 135 Misc 2d 520, 532). By Family Court Act § 1046 (a) (ii), this analysis is set forth, on a prima facie basis, by evidence that the child's injury or condition is "of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent." Once established, the burden is upon the respondent to rebut the presumption (*see, Matter of Philip M.*, 82 NY2d 238, 246).

Yet, a MSP diagnosis is not typically based upon these factors alone; rather, it becomes an assessment of "the total picture presented" (*Matter of Aaron S., supra,* at 969). Notably, within that picture the parent or caretaker of an MSP child is typically described as:

"articulate and bright, and possesses a high degree of medical knowledge and/or fascination with medical details and hospital gossip, and seems to enjoy the hospital environment. Normally the mother seems almost unperturbed by the serious nature of her child's medical course and is highly supportive and/or encouraging of the physician and medical staff. She is a highly attendant parent who is reluctant to leave her child's side and is often perceived as very needy herself. The parent-child relationship is so intimate as to be described as 'symbiotic' * * *

"[and] [t]he suspected parent may be a health care professional, have a nursing degree or nursing training" (*id.*, at 969-970; *see, Matter of Jessica Z., supra,* at 521-522).

Respondent exhibits none of these characteristics. Her testimony revealed that she is a farm worker with a ninth grade education, lacking any medical training or knowledge; the record fails to establish that she developed any particular rapport or relationship of trust with either the attending physicians, nurses or other hospital staff and, in fact, testified to a confrontational relationship with Kjolhede from its inception. Neither was it established that she had an especially close or symbiotic relationship with Caroline nor had sought out an unreasonable number of medical providers. Notably, no psychiatric evidence was proffered (*see, Matter of Aaron S.*, 163 Misc 2d 967, *supra; Matter of Jessica Z.*, 135 Misc 2d 520, *supra*).

Reviewing next Caroline's medical records, the August 1996 hospital discharge recounts Betzhold's recommendation that Caroline be placed on a lactose-free diet. The September 1996 hospitalization notes indicate that the low lactose diet led to approximately four to five loose bowel movements per day *while in the hospital.* Between these two hospitalizations, evidence

established that respondent did not seek healthcare from new or independent sources; she only followed up with referrals from Betzhold in both pediatric neurology and pediatric endocrinology. In connection therewith, the September 1996 surgical pathology report confirmed Betzhold's diagnosis of Giardia lamblia with mild chronic inflammation associated with mild villis[4] blunting/fusion. As reflected in the final discharge summary of March 1999, the neurology department could not rule out a metabolic disorder.

Kjolhede, who admitted to a lack of training or expertise in this area, was the sole medical provider who diagnosed Caroline as a victim of MSP. Notably, he failed to consult with Liljeberg prior to such diagnosis and dismissed the severe rash that he noted on the child's buttocks after her removal from respondent's care. Moreover, the child's initial foster parent, Failing, testified that the child's diarrhea continued and that she did not follow the lactose-free dietary restrictions noted in the child's medical records. Although Failing testified that Caroline exhibited none of the signs of hypoglycemia once removed from respondent's care, the testimony of Citron and Valez was to the contrary.

In our view, the testimony of Liljeberg was critical in terms of the "total picture presented"; he never came to the diagnosis of MSP since Betzhold, to whom he referred respondent, was not convinced that the child's symptoms lacked objective medical grounding. Betzhold felt that the hypoglycemia could possibly be related to a decreased nutritional intake as did Dise, the occupational therapist who questioned the child's nutritional intake because of her difficulty in chewing solid foods. Again, Liljeberg testified that throughout their long-term relationship, there were no suspected behaviors by respondent which fit the MSP profile.

Although Family Court's weighing of conflicting testimony is to be accorded considerable deference given its first-hand observation of the witnesses' demeanor to assess credibility (see, Matter of Suffolk County Dept. of Social Servs. [Aaron S.], 215 AD2d 395, 396), we cannot find that the brief determination rendered after the fact-finding hearing is supported by a preponderance of the evidence. Viewing the totality of the evidence presented to support a finding of MSP, a finding of neglect cannot be sustained either as to Caroline (see, Matter of

---

4. For a definition of Giardia lamblia see footnote 2. The further description of the diagnosis pertains to an irregularity in the covering of the mucous membrane of the small intestine which could inhibit the absorption of nutrients (see, Webster's Medical Desk Dictionary [1st ed 1986]).

*Hofbauer*, 47 NY2d 648; *Matter of Jessica YY.*, 258 AD2d 743; *see also*, *In re Colin R.*, 63 Md App 684, 493 A2d 1083; *In re Keefe*, 49 Mass App Ct 818, 733 NE2d 1075; *In re Joseph P.*, 2000 WL 528171, 2000 Conn Super LEXIS 984 [Super Ct Conn, Apr. 14, 2000, Schuman, J.]; *In re Patrick C.*, 1998 WL 227770, 1998 Conn Super LEXIS 1207 [Super Ct Conn, May 1, 1998, Purtill, J.]) or the remaining two children (*see*, Family Ct Act § 1046 [a] [ii]).

Mercure, J. P., Spain, Rose and Lahtinen, JJ., concur. Ordered that the order is reversed, on the law, without costs, and petition dismissed.