■ In the Matter of Israel S. and Others, Children Alleged to be Neglected. Lawrence M., Appellant; Commissioner of Social Services of the City of New York, Respondent, et al., Respondent. [764 NYS2d 96] —Orders, Family Court, Bronx County (Marjory Fields, J.), entered on or about January 13, 1999, which, to the extent appealed from, after a hearing, entered a finding that the subject children were neglected by appellant Lawrence M., unanimously reversed, on the law, without costs, and the petition dismissed as to him, and orders, same court and Justice, entered on or about May 17, 1999, which, to the extent appealed from, after a dispositional hearing, placed the subject children in the custody of the Commissioner of Social Services for a period of six months, unanimously reversed, on the law, without costs, and the orders vacated.

In May of 1998, respondent-appellant father, Lawrence M. (hereinafter the father), was asked to care for his children by the Administration for Children's Services (ACS) caseworker after respondent mother Sherion S. (hereinafter the mother) was incarcerated for excessive corporal punishment of Elijah S., one of their five children. Prior to this incident of abuse and the mother's subsequent incarceration, the father did not live at the home of his children, and, although he frequently visited them, he was not in the home on the day the mother abused Elijah. During the criminal proceeding, a temporary order of protection was issued against the mother. The caseworker informed the father that the mother could not visit the children during the period designated in the temporary order of protection. While he cared for the children, the father, pursuant to the terms of the order of protection, did not allow the mother to visit with them.

The temporary order of protection was extended twice—once

on June 3, 1998 until June 25, 1998, and again on June 25, 1998 until August 12, 1998. During the time the order of protection was in place, the mother saw the children two times. The first was when she returned to her home after her release from jail to shower and to pick up clothes. She saw them briefly in the yard and in the company of their babysitter. It is uncontested that all parties knew on that day the order of protection was in effect. The father admonished the babysitter at that time, and the problem was not repeated. The second time the mother saw the children was after the father had been incarcerated for smashing a window in a welfare office on August 6, 1998. On that occasion, the caseworker assigned to the children went to the home, found the mother in charge of them, but did not remove them.*

Thereafter, petitioner Commissioner of Social Services of the City of New York (hereinafter petitioner) commenced this proceeding against both the mother and the father. The petition alleged, inter alia, that the father knew or should have known of the use of excessive corporal punishment by the mother and did nothing to protect the children and that the father failed to prevent the mother from making contact with the children on August 6, 1998, the day he was arrested. As a result of this proceeding, the children were remanded to petitioner's custody. After a fact-finding hearing, the court found Elijah S. to be a child neglected by the father and his four siblings to be derivatively neglected by the father.

We reverse. In order to find neglect on the basis of allowing a child to be harmed by the parent who did not engage in excessive punishment, the test is whether the nonparticipating parent acted reasonably under the circumstances (see *Matter of Alena O.,* 220 AD2d 358 [1995]). It is uncontroverted in the record that both the father and the caseworker were not aware of the second extension of the order of protection. In addition, the mother claimed that she was unaware of the second extension. In any event, even had the father been aware of the extension, petitioner failed to establish that he acted unreasonably in these difficult circumstances. Up to this point the father had conscientiously supervised his children and had kept the mother from contacting them. Thus, petitioner did not meet its burden of proving, by a preponderance of evidence, that the father failed to exercise the "minimum degree of care" in providing the children with proper supervision (Family Ct Act § 1012 [f] [i] [B]).

---

* There is conflicting evidence in the record about how the mother was advised of the father's arrest and whether the father directly contacted the mother and requested that she stay with the children.

Petitioner also failed to prove that the father observed or knew of the mother's use of excessive corporal punishment prior to the incident in question, which occurred when he was not living with the children (*see Matter of P. Children,* 272 AD2d 211 [2000], *lv denied* 95 NY2d 770 [2000] [no showing that father had prior reason to know that child was in danger]; *see also Matter of Miranda O.,* 294 AD2d 940 [2002] [evidence did not permit inference that mother knew or should have reasonably known of substantial risk of leaving child in care of boyfriend]; *Matter of Kevin T.,* 181 Misc 2d 386 [1999] [mother not guilty of abuse for leaving child in father's care where there was no evidence that father had ever placed child at risk in past]). The children's out-of-court statements that the father witnessed excessive punishment administered by the mother on prior occasions were general, unspecific and uncorroborated by medical evidence showing that such punishment occurred (*see Matter of Jennifer Q.,* 231 AD2d 429 [1996]). Notably, petitioner did not bring a proceeding against the father at the time of the initial beating. Instead, petitioner placed the children in his care (*see Nicholson v Williams,* 203 F Supp 2d 153, 218-219 [2002] [mission statement of ACS states that any ambiguity regarding the safety of a child must be resolved by removing the child from harm's way]). Accordingly, petitioner failed to meet its burden of proving that the father abused Elijah. Because no basis exists to find that the father knew about but failed to protect one child, there is no foundation for the derivative finding of neglect with respect to the other children (Family Ct Act § 1046 [a] [i]).

We need not reach the father's remaining contentions in light of our determination.

Because the validity of the dispositional order dated May 17, 1999 "rested upon the correctness of the initial determination of neglect" (*Matter of Daniel C.,* 47 AD2d 160, 165 [1975]), the order should be vacated as to him. Concur—Saxe, J.P., Ellerin, Williams, Lerner and Marlow, JJ.