Clark, J.
 

 Appeals (1) from two orders of the Family Court of Otsego County (Lambert, J.), entered April 21, 2016 and June 3, 2016, which, among other things, granted petitioner’s application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate the subject children to be abused and/or neglected, and (2) from six orders of protection entered thereon.
 

 At all relevant times, respondent and Benjamin HH. (hereinafter the father) lived together with their four-month-old son, Lucien HH. (born in 2015), and respondent’s four-year-old son from a prior relationship, Anthony II. (born in 2010). On August 24, 2015, respondent and the father brought the younger child to see his pediatrician to address redness and swelling of the child’s right leg. Upon determining that there were signs of nonaccidental trauma, the pediatrician made a hotline report to Child Protective Services and admitted the younger child to the hospital for further evaluation and treatment. A subsequent skeletal survey and examination by an orthopedic surgeon revealed that the younger child had sustained an acute fracture to his right ankle and that there were prior fractures to his left ulna, left humerus and left femur, which were in the process of healing. The children were, upon consent, placed in petitioner’s care, and petitioner thereafter commenced this Family Ct Act article 10 proceeding alleging that respondent had abused and neglected the younger child and neglected the older child.
 
 [1]
 
 Upon a further agreement among the parties, Family Court ordered that the children continue in the care and custody of petitioner. Following a fact-finding hearing, Family Court concluded that respondent abused the younger child and derivatively neglected the older child and, after a dispositional hearing, ordered the children to remain in petitioner’s care and custody and entered orders of protection restricting respondent to supervised visitation with the children. Respondent now appeals, challenging the sufficiency of the evidence upon which Family Court based its findings.
 
 [2]
 

 Pursuant to Family Ct Act § 1046 (a) (ii), a prima facie case of child abuse or neglect may be established through evidence that the child sustained an injury that would ordinarily not occur absent an act or omission of the respondent, and that the respondent was the caretaker of the child at the time that the injury occurred (see Matter of Philip M., 82 NY2d 238, 243 [1993]; Matter of Miranda HH. [Thomas HH.], 80 AD3d 896, 897 [2011]; Matter of Ashley RR., 30 AD3d 699, 700 [2006]). If the petitioner makes out a prima facie case, “the burden of going forward shifts to [the] respondent [ ] to rebut the evidence of parental culpability” (Matter of Philip M., 82 NY2d at 244; see Matter of Brayden UU. [Amanda UU.], 116 AD3d 1179, 1180 [2014]; Matter of Jordan XX., 53 AD3d 740, 740-741 [2008]), although the petitioner retains the ultimate burden of establishing abuse and neglect by a preponderance of the evidence (see Family Ct Act § 1046 [b] [i]; Matter of Philip M., 82 NY2d at 244; Matter of Jaiden T.G. [Shavonna D.-F.], 89 AD3d 1021, 1022 [2011]; Matter of Seamus K., 33 AD3d 1030, 1031 [2006]). “Although generally referred to as a presumption, this method of proof does not create a true presumption; it creates a permissible inference which the factfinder may draw, but does not compel a finding in accordance with that inference” (Matter of Ashley RR., 30 AD3d at 700 [citations omitted]; see Matter of Philip M., 82 NY2d at 244). Indeed, even if the petitioner presents a prima facie case of abuse and neglect, Family Court must weigh all of the evidence before making a determination (see Matter of Philip M., 82 NY2d at 244; Matter of Ashley RR., 30 AD3d at 700).
 

 The orthopedic surgeon who examined the younger child and reviewed the skeletal survey testified that the acute ankle fracture occurred roughly 48 to 72 hours before the child presented at his pediatrician’s office, and that the fractures to his left ulna, humerus and femur occurred at the same time, which was at least three weeks prior to the ankle fracture. The testimony of the orthopedic surgeon, as well as another physician who examined the younger child at the hospital, established that the fractures could not have been self-inflicted or caused by the older child and that the younger child did not have a bone disease that could explain the fractures. Both the orthopedic surgeon and the physician testified that multiple fractures do not ordinarily occur in infants absent trauma, and the orthopedic surgeon opined that, because the fractures were at different stages of healing, the younger child was a victim of child abuse. Furthermore, the evidence, including respondent’s own statements to the police and a Child Protective Services caseworker, demonstrated that respondent and the father were the children’s sole caretakers. Together, this evidence established that the fracture to the younger child’s right ankle, as well as the earlier fractures, were the types of injuries that would not ordinarily be sustained by an infant absent an act or omission on the part of respondent and/or the father (see Matter of Seamus K., 33 AD3d at 1032; Matter of Robert YY., 199 AD2d 690, 691 [1993]).
 

 Petitioner’s proof also demonstrated that the father admitted to the police that he may have caused one of the injuries by grabbing, pulling and twisting the younger child’s leg when he dragged the child towards him on the couch and that he had engaged in similar behavior on eight or nine prior occasions when caring for the child.
 
 [3]
 
 Given these admissions, respondent could only be held accountable for abuse or neglect if “she ‘knew or should reasonably have known’ ” that she was placing the younger child in danger by leaving him in the care of the father (Matter of Robert YY., 199 AD2d at 692, quoting Matter of Sara X., 122 AD2d 795, 796 [1986], appeal dismissed 69 NY2d 707 [1986]). In other words, where, as here, the petitioner seeks a finding of abuse or neglect against the respondent based upon the acts or omissions of another parent or caretaker, such a finding hinges on whether “ ‘it can be determined, on the basis of objective evidence, that a reasonably prudent parent would have acted differently and, in so doing, prevented the injury’ ” (Matter of Joseph DD., 214 AD2d 794, 795 [1995], quoting Matter of Robert YY., 199 AD2d at 692). Under these circumstances, a finding of abuse requires evidence that the respondent “allow[ed]” physical injury to be inflicted upon a child “by other than accidental means” (Family Ct Act § 1012 [e] [i]) or “create [d] or allow [ed] to be created a substantial risk of physical injury to [the] child by other than accidental means” (Family Ct Act § 1012 [e] [ii]), and a finding of neglect requires proof that the respondent failed “to exercise a minimum degree of care ... in providing the child with proper supervision . . . by unreasonably . . . allowing to be inflicted harm, or a substantial risk thereof” (Family Ct Act § 1012 [f] [i] [B]).
 

 Based upon our review of the evidence in this record, we cannot conclude that respondent knew or should reasonably have known that she was placing the younger child in danger by leaving him in the care of his father while she went to work. Respondent consistently maintained, in her testimony and in her various statements to law enforcement and a Child Protective Services caseworker, that she did not know how the fractures had occurred, that she did not think the father had caused them and that, prior to observing redness and swelling in the child’s leg on August 23, 2015, she had not noticed anything unusual or concerning with respect to the younger child. While petitioner admitted into evidence several text messages in which the father expressed frustration with the children, respondent stated to the investigating caseworker that she simply thought that the father was frustrated and that he would calm down.
 
 [4]
 
 Respondent testified that the father never indicated to her that he had physically injured the younger child or that his frustration was at such a level that he might physically hurt the child. According to the caseworker, respondent stated that the father was not a “yeller” and did not get physical with or spank the children in her presence. The evidence also established that respondent was cooperative throughout the investigation and participated in a controlled phone call to the father, in which he admitted to her that he had injured the younger child. By all accounts, respondent became visibly upset and cried when she learned of the father’s admissions.
 

 Furthermore, although the medical testimony demonstrated that the younger child would have likely experienced some discomfort after sustaining the fractures, the orthopedic surgeon and the other hospital physician testified that not every fracture results in redness and swelling and that, because infants heal rather quickly, any pain or discomfort may not have lasted that long. Respondent testified that, prior to August 23, 2015, she did not observe any visible signs of injury and the younger child did not appear to be in pain or distress when she interacted with him. Rather, respondent described the child as being “a very happy, non-fussy child.” Finally, the evidence established that respondent took the younger child to the pediatrician for well-child visits at two weeks, two months and four months, and the pediatrician did not observe anything unusual during his examinations. Considering the foregoing evidence, the record does not establish by a fair preponderance of the evidence that respondent knew or reasonably should have known that the younger child was in danger in the father’s care and that a reasonably prudent parent would have acted differently under the circumstances (see Matter of Stephanie K., 1 AD3d 939, 940 [2003]; Matter of Robert YY., 199 AD2d at 692; compare Matter of Penny Y. [Roxanne Z.], 129 AD3d 1117, 1118-1119 [2015]; Matter of Michael I., 276 AD2d 839, 840-841 [2000], lv denied 96 NY2d 701 [2001]). As such, Family Court’s finding that respondent abused the younger child must be reversed.
 

 Nor do we find that respondent neglected the younger child by failing to seek medical care for the child when she observed redness and swelling in his leg on the evening of August 23, 2015.
 
 [5]
 
 Respondent testified that the child was not crying, that she thought the redness and swelling could be a reaction to vaccines that the child had a few days earlier and that she continually monitored the child’s condition that evening and throughout the next day. According to respondent, prior to leaving for work the following morning, she directed the father to monitor the child’s leg and let her know if it got worse. Respondent testified that she checked in with the father on her lunch break, scheduled an appointment with the child’s pediatrician for immediately after work and instructed the father to take the child to the doctor earlier if he determined that it could not wait. Under these circumstances, the record does not support a finding that respondent neglected the younger child by, as petitioner contends, failing to secure prompt medical attention (compare Matter of Nicholas S. [John T], 107 AD3d 1307, 1310 [2013]; Matter of Seamus K., 33 AD3d at 1035).
 

 Finally, because there is an insufficient evidentiary basis to support a finding that respondent abused or neglected the younger child, Family Court’s finding that respondent derivatively neglected the older child cannot stand (see Matter of Katrina CC. [Andrew CC.], 118 AD3d 1064, 1066 [2014]; Matter of Israel S., 308 AD2d 356, 358 [2003]; Matter of Robert YY., 199 AD2d at 692).
 

 Egan Jr., J.P., Devine, Mulvey .and Rumsey, JJ., concur.
 

 Ordered that the orders entered April 21, 2016 and June 3, 2016 are reversed, on the law, without costs, and petition dismissed. Ordered that the appeal from the orders of protection is dismissed, as moot, without costs.
 

 [1]
 

 . Petitioner filed a separate abuse and neglect petition against the father. Family Court ultimately found that the father severely abused the younger child and derivatively neglected the older child.
 

 [2]
 

 . Respondent’s appeal from the orders of protection is moot, as the orders were either superceded or have expired by their own terms (see Matter of Olivia SS. [William TT.], 75 AD3d 800, 801 [2010]).
 

 [3]
 

 . The father did not implicate respondent as having knowledge of his actions or as being complicit in causing the injuries in any way.
 

 [4]
 

 . Petitioner’s director testified that respondent and the father began receiving preventative services shortly after the younger child was born, in part because respondent reportedly told one of the hospital nurses that the father had left because he was angry and did not want to hurt the child. However, respondent disputed this account, stating that she told the nurse that the father left because he did not want to be upset around the child.
 

 [5]
 

 . Family Court did not expressly find that respondent neglected the younger child.