Matter of Liana HH. (Christopher HH.) (2018 NY Slip Op 07001)





Matter of Liana HH. (Christopher HH.)


2018 NY Slip Op 07001


Decided on October 18, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 18, 2018

524568

[*1]In the Matter of LIANA HH. and Another, Alleged to be Abused and Neglected Children. SULLIVAN COUNTY DEPARTMENT OF FAMILY SERVICES, Respondent; CHRISTOPHER HH., Appellant.

Calendar Date: September 10, 2018

Before: McCarthy, J.P., Lynch, Devine, Mulvey and Pritzker, JJ.


Abissi & Associates, Beacon (Heather M. Abissi of counsel), for appellant.
Sullivan County Department of Family Services, Monticello (Alexandra Bourne of counsel), for respondent.
E. Danielle Jose-Decker, Monticello, attorney for the child.



MEMORANDUM AND ORDER
Devine, J.
Appeals (1) from an order of the Family Court of Sullivan County (McGuire, J.), entered October 27, 2016, which partially granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate the subject children to be abused and neglected, and (2) from an amended order of said court, entered January 18, 2017, which, among other things, imposed the terms of a prior protective order.
Respondent is the father of two children, Liana HH. (hereinafter the child; born in 2014) and her older brother (born in 2013). On the evening of April 1, 2015, the child was alone with respondent at the family residence when she stopped breathing. Respondent and a neighbor who was a retired nurse attempted to resuscitate the child, and she was soon transported to a local hospital for emergency medical attention. The child was airlifted to another hospital and was eventually diagnosed with venous sinus thrombosis (clotting in a vein draining blood from the brain), bleeding on the brain and severe retinal hemorrhaging. The child had no bone fractures, bruising or other markings suggestive of abuse, nor was there any direct proof that respondent had behaved inappropriately toward the child. Nevertheless, after consulting on the child's case, a pediatrician versed in child abuse could find no explanation for the child's condition aside from nonaccidental trauma.
Petitioner thereafter commenced this proceeding, alleging that respondent abused, neglected and severely abused the child and derivatively abused and neglected her older brother. Following an extensive fact-finding hearing, Family Court rejected respondent's efforts to call the [*2]consulting pediatrician's opinion into question and sustained the petition to the extent of adjudicating the child to be abused and neglected. Respondent appeals from that order, as well as the amended order of disposition.
Family Ct Act § 1046 (a) (ii) provides that petitioner may establish "a prima facie case of child abuse or neglect
. . . through evidence that the child sustained an injury that would ordinarily not occur absent an act or omission of the respondent, and that the respondent was the caretaker of the child at the time that the injury occurred" (Matter of Lucien HH. [Michelle PP.], 155 AD3d 1347, 1348 [2017]; see Matter of Philip M., 82 NY2d 238, 243 [1993]; Matter of Logan C. [John C.], 154 AD3d 1100, 1102 [2017], lv denied 30 NY3d 909 [2018]). Contrary to respondent's contention, petitioner did so here. It was undisputed that respondent was alone with the child when she stopped breathing, and the consulting pediatrician testified to her involvement in the child's case and the reasons that she became convinced that recent, nonaccidental trauma was the only explanation for the child's condition.
This prima facie case did not guarantee a finding of abuse or neglect, but "establish[ed] a rebuttable presumption of parental culpability which the court may or may not accept based upon all the evidence in the record" (Matter of Philip M., 82 NY2d at 246; accord Matter of Miranda HH. [Thomas HH.], 80 AD3d 896, 897 [2011]; see Matter of Lucien HH. [Michelle PP.], 155 AD3d at 1348). Petitioner must still prove abuse or neglect by a preponderance of the evidence and, importantly, proof of "a reasonable explanation for the child's injuries" will rebut the presumption of culpability (Matter of Natalie AA. [Kyle AA.], 130 AD3d 50, 53 [2015]; see Matter of Philip M., 82 NY2d at 244). As such, before relying upon the presumption set forth by Family Ct Act § 1046 (a) (ii), "the court should consider such factors as the strength of the prima facie case and the credibility of the witnesses testifying in support of it, the nature of the injury, the age of the child, relevant medical or scientific evidence and the reasonableness of the caretaker's explanation in light of all the circumstances" (Matter of Philip M., 82 NY2d at 246).
Respondent and the child's mother testified that the child exhibited little beyond mild fussiness and had an unsettled stomach prior to her collapse on April 1, 2015 and, as noted above, there was no direct proof that respondent had abused or otherwise behaved inappropriately toward the child. Respondent also presented the testimony of a pediatric neurologist, as well as a radiologist with expertise in the intracranial anatomy of children, to contest the prima facie case of abuse and neglect. The pediatric neurologist testified that he reviewed MRIs and CT scans and found that the child had venous thrombosis, fluid buildup around the brain, hemorrhages near the brain and behind the eyes and evidence of a cerebellar stroke. He explained how venous thrombosis would not immediately result in obvious symptoms but would disrupt venous circulation in the brain and, in the child's case, cause a cerebellar stroke, brain and retinal hemorrhages and seizure activity. He further noted that the child's condition was exacerbated by fluid that had already built up around the child's brain, which the undisputed evidence suggested had been present well before her collapse. The neurologist found it unlikely that head trauma caused any of this, noting that there was no evidence of trauma such as a skull fracture or brain contusion and observing that it would be "exceedingly rare" for trauma to cause a stroke in the well-protected cerebellum. He instead opined that the child developed a venous thrombosis — which he suspected arose from undiagnosed thrombophilia but stated could have arisen from another cause and sometimes had no apparent cause — and that this clotting was what led to her brain and eye conditions. The pediatric radiologist, in turn, explained the anatomy involved, agreed that there was no evidence of trauma and opined that the venous thrombosis and fluid buildup around the child's brain could have resulted from natural disease and would have led to the child suddenly becoming symptomatic as she did.
Petitioner attempted to preserve the presumption in the face of this detailed proof by presenting the rebuttal testimony of an ophthalmologist, who stated that the child's retinal hemorrhaging could not be explained by the theory advanced by respondent's experts. The ophthalmologist went on to admit, however, that retinal hemorrhages could arise from causes other than trauma and that the medical community was divided on whether retinal hemorrhages [*3]were a secondary effect of brain problems rather than the result of direct trauma. Family Court questioned respondent's account of events and found petitioner's experts more credible and, while we defer to those credibility determinations, we also "independently review the weight of the competing expert evidence" (Matter of Natalie AA. [Kyle AA.], 130 AD3d at 57; see Matter of Makayla I. [Caleb K.], 162 AD3d 1139, 1140 [2018])[FN1]. Family Court acknowledged that the alternate explanation proffered by respondent was supported by medical experts who drew a very different conclusion from the available data, and the court's skepticism as to whether respondent's explanation accurately reflected what had occurred was not equivalent to finding it so implausible as to allow the presumption of parental responsibility to stand (see Matter of Natalie AA. [Kyle AA.], 130 AD3d at 59; Matter of Amir L. [Chantel B.], 104 AD3d 505, 506 [2013]). In our view, respondent advanced a persuasive, factually based explanation as to how the child's "condition could reasonably have occurred
. . . without the acts or omissions of respondent" (Matter of Philip M., 82 NY2d at 244 [emphasis added]; see Matter of Natalie AA. [Kyle AA.], 130 AD3d at 59; Matter of David T.-C. [Denise C.], 110 AD3d 1084, 1086 [2013]). This was enough to rebut the presumption of parental responsibility afforded by Family Ct Act § 1046 (a) (ii) and, inasmuch as petitioner's case relied upon that presumption, petitioner failed to sustain its burden of showing by a preponderance of the evidence that respondent abused or neglected the child.
In light of the foregoing, respondent's remaining contentions are academic.
McCarthy, J.P., Lynch, Mulvey and Pritzker, JJ., concur.
ORDERED that the order and amended order are modified, on the law, without costs, by reversing so much thereof as granted petitioner's application with respect to Liana HH.; petition dismissed in its entirety; and, as so modified, affirmed.



Footnotes

Footnote 1: Family Court was free to weigh the credibility of the experts, of course, but we confess our puzzlement at its position that respondent's experts were somehow less credible because they felt strongly enough about his case to testify on his behalf without receiving compensation.