■ In the Matter of PETER R. and Another. ADMINISTRATION FOR CHILDREN'S SERVICES, Appellant; STACEY R. et al., Respondents. [779 NYS2d 137]—

In a child protective proceeding pursuant to Family Court Act article 10, the petitioner appeals from an order of the Family Court, Queens County (Salinitro, J.), dated November 24, 2003, which, after a fact-finding hearing, dismissed the petition.

Ordered that the order is reversed, on the law and the facts, without costs or disbursements, the petition is reinstated, a finding is made that the respondents abused and/or neglected the child Peter R. and derivatively neglected the child Matthew R., and the matter is remitted to the Family Court, Queens County, for a dispositional hearing.

Family Court Act § 1046 (a) (ii) "provides that a prima facie case of child abuse or neglect may be established by evidence of (1) an injury to a child which would ordinarily not occur absent an act or omission of respondents, and (2) that respondents were the caretakers of the child at the time the injury occurred" (*Matter of Philip M.,* 82 NY2d 238, 243 [1993]). Although the burden of proving child abuse or neglect always remains with the petitioner, once a prima facie case has been established, a presumption of parental responsibility arises, and the burden of going forward to rebut the presumption shifts to the respondents (*see Matter of Philip M., supra* at 244).

Here, the petitioner sustained its burden of establishing a prima facie case of abuse and/or neglect by presenting proof that Peter R. sustained a linear parietal skull fracture while in the care of the respondent parents. The evidence presented by the petitioner reveals that the mother contacted her family pediatrician on November 5, 2001, and told him that Peter, who was then 10 months old, had a small lump on his head. When the mother asked the pediatrician whether she could wait until Peter's next scheduled appointment for the lump to be examined, he advised her to bring Peter in that evening so that he could determine what had happened, and how the child was doing. Although the mother did not follow this advice, both parents brought Peter to his pediatrician's office three days later, reporting that the lump became bigger. By that point in time, the area of swelling on the infant's head had grown to the size of about half a baseball, and the pediatrician instructed the parents to take him to the hospital for x-rays. When the pediatrician asked how Peter sustained his injury, the parents indicated that they didn't know, that "it was a mystery."

At the hospital on November 9, 2001, the mother initially explained Peter's injury by stating that about a week earlier, he had "rolled off" a couch, landing on his back on a carpeted floor. Later that day, the mother additionally claimed that on the morning of November 5, 2001, Peter was sitting on the floor in the family's kitchenette when his three-year-old brother Matthew pushed him over. The left side of Peter's head then struck the kitchenette floor, which was composed of linoleum-covered concrete. The petitioner's expert witness, a pediatrician with experience and training in the area of child abuse who interviewed the mother at the hospital, concluded that neither of these explanations was plausible. According to the petitioner's expert, it was highly improbable that a fall from a sofa to a carpeted floor would generate sufficient force to cause a skull fracture. She similarly stated that it was improbable that a three-year-old sibling pushing an infant over onto a linoleum-covered floor could generate sufficient force to fracture the infant's skull. The petitioner's expert also testified that many studies indicated that 80% of skull fractures in children under the age of 15 months were likely to have been inflicted rather than accidental.

In an effort to rebut the presumption of parental responsibility arising from the petitioner's prima facie showing of abuse and/or neglect, the respondent parents presented the testimony of a neurosurgeon who was a family friend for many years. In the neurosurgeon's opinion, the skull fracture was caused by the trauma generated when three-year-old Matthew "smacked" Peter's head against the concrete floor of the kitchenette. In reaching this conclusion, the neurosurgeon relied upon the mother's description of the incident to him, that Matthew was running when he grabbed Peter by the head and slammed him down. Although the neurosurgeon was also aware of the mother's claim that Peter fell from a couch, he did not believe that such a fall could have caused the fracture because no significant force was involved. Both parents also testified at the hearing regarding the possible causes of the skull fracture and how they responded when they noticed the swelling on Peter's head.

After the parties rested, the Family Court called a pediatric neurologist to testify as its own independent witness. The independent expert testified that the skull fracture could have been caused either by Peter's alleged fall from the couch or by the kitchenette incident, and that there was no indication that the injury was the result of "anything other than accidental trauma." In support of his conclusion, the independent expert cited the

lack of any other evidence that the R. children had been abused or neglected.

The Family Court found that the testimony of the respondents' expert witness was insufficient to rebut the presumption of parental culpability for Peter's injury, noting that his credibility was diminished by the fact that he was a family friend, and that he did not review pertinent medical records. Despite its conclusion that the respondents failed to rebut the petitioner's prima face case, the Family Court dismissed the petition, giving great weight to the independent expert's conclusion that the skull fracture had apparently been caused by accidental trauma. The petitioner appeals.

Although deference should be accorded to the Family Court's appraisal of the credibility of witnesses (*see Matter of Irene O.*, 38 NY2d 776, 777 [1975]; *Matter of Suffolk County Dept. of Social Servs. [Jameria A.] v Nicole S.*, 266 AD2d 556 [1999]; *Matter of Daniel R., Jr.*, 241 AD2d 956, 957 [1997]), we nevertheless are free to make our own credibility assessments and, where proper, make a finding of abuse and/or neglect based upon the record before us (*see Matter of Marc A.*, 301 AD2d 595, 596 [2003]; *Matter of New York City Dept. of Social Servs. [H. & J. Children] v Carmen J.*, 209 AD2d 525, 527 [1994]). Here, the evidence presented at the hearing established that a 10-month-old infant sustained an injury which ordinarily would not occur in the absence of abuse or neglect (*see Matter of Koby S.*, 2 AD3d 451 [2003]; *Matter of Shetonya W.*, 203 AD2d 144 [1994]), and the petitioner's expert witness, who had training and experience in the area of child abuse, determined that neither of the explanations the mother offered at the hospital were plausible. Furthermore, while the Family Court found the mother to be a generally credible witness, there were significant inconsistencies in her testimony which raised doubt as to the reliability of her account. Notably, the mother was unable to offer her family pediatrician any explanation for Peter's injury, and she did not initially mention the kitchenette incident when questioned at the hospital about how the child had been injured. Furthermore, while the mother's initial descriptions of the kitchenette incident merely indicated that Peter was pushed over by three-year-old Matthew, she elaborated considerably on this account at the hearing by claiming that Matthew was running and had some momentum when he "practically tackle[d]" Peter, pushing him over, and using his right arm to hold Peter's head down. This embellished version of the kitchenette incident undercut the mother's claim that she did not immediately connect it with the growing lump on Peter's head, and thus she failed to men-

tion it when first questioned at the hospital about the injury. In addition, our review of the record convinces us that the Family Court placed undue weight on the testimony of the independent expert, who had no personal contact with the R. family, did not review the parents' hearing testimony, and reached his conclusion that the skull fracture could have been caused either by the fall from the couch or the kitchenette incident without specifically considering relevant factors such as the height and velocity of these reported falls and the force used. Accordingly, we find that the petitioner established by a preponderance of the evidence that Peter was an abused and/or neglected child (*see* Family Ct Act § 1012 [e] [i], [ii]; [f] [i] [B]). We further conclude that the proof of the abuse and/or neglect of Peter was sufficient to establish that his brother Matthew was a derivatively neglected child (*see* Family Ct Act § 1046 [a] [i]; *Matter of Marc. A., supra*). Altman, J.P., Smith, Krausman and Skelos, JJ., concur.