▉ In the Matter of SYRIAH J. and Another, Children Alleged to be Abused. ESTHER J. et al., Appellants; ADMINISTRATION FOR CHILDREN'S SERVICES, Respondent. [59 NYS3d 375]—

Order, Family Court, Bronx County (Valerie A. Pels, J.), entered on or about February 2, 2016, which, to the extent appealed from, found, after a hearing, that respondent grandmother and respondent mother abused the child Syriah J. and derivatively abused the child Queenzephanyia E., unanimously affirmed, without costs.

The evidence submitted on petitioner's direct case supports the court's finding that respondents abused Syriah by showing that, while she was in their care, Syriah suffered an injury that would not ordinarily occur absent an act or omission of the person responsible for her care (*see e.g. Matter of Philip M.*, 82 NY2d 238, 243-244 [1993]; *Matter of Matthew O. [Kenneth O.]*, 103 AD3d 67, 74 [1st Dept 2012]). "[Petitioner] was not required to establish whether the mother or the [grandmother] actually inflicted the injuries, or whether they did so together" (*Matter of Nyheem E. [Jamila G.]*, 134 AD3d 517, 518 [1st Dept 2015]).

A preponderance of the evidence supports the court's conclusion that Syriah's injuries were inflicted and not accidentally caused. She suffered a traumatic brain injury, which resulted in anoxic ischemic encephalopathy and subdural hematoma,

from which she died. Doctor Cahill, a pediatrician qualified as an expert in child abuse pediatrics, opined to a reasonable degree of medical certainty that Syriah's injuries were the result of a shaking event. Among other things, Syriah had no skull fracture, and, as one expert testified, without a skull fracture, the most likely explanation for subdural hemorrhage and anoxic change is vigorous shaking.

Respondents failed to demonstrate that Syriah's injuries "could reasonably have occurred accidentally" so as to rebut petitioner's prima facie showing of abuse (see Matter of Philip M., 82 NY2d at 244). The testimony of petitioner's experts ruled out the possibility that the injuries were caused, as respondents contend, by a short fall from a mattress to the floor. Indeed, respondents' own experts testified that it would be "unusual" and "extremely rare" for a child to suffer the injuries that Syriah suffered from a short fall.

The court properly exercised its discretion in crediting the testimony of petitioner's doctors, and particularly Doctor Cahill, a board-certified pediatrician who had a sub-certification in child abuse and was trained specifically to identify the hallmarks of shaken baby syndrome and abusive head trauma, over respondents' experts, who did not observe Syriah first-hand (see Matter of Nakym S., 60 AD3d 578 [1st Dept 2009]). Doctor Cahill's failure to have reviewed certain hospital records did not require the court to reject her testimony outright. The court, in a comprehensive decision, carefully weighed all of the expert testimony, and we see no reason to disturb the court's finding that respondents' experts were less persuasive than petitioner's experts.

The court found that respondents' accounts of the relevant events were "riddled with inconsistencies, and simply not credible," and, upon our review of the record, we see no reason to depart from the general rule of deferring to the hearing court's credibility findings (see Matter of Andrew R. [Andrew R.], 146 AD3d 709 [1st Dept 2017]).

In view of the foregoing, the court properly made a derivative finding of abuse as to Queenzephanyia (see Matter of Marino S., 100 NY2d 361, 374 [2003], cert denied 540 US 1059 [2003]).

We have considered respondents' remaining contentions, and find them unavailing.* Concur—Acosta, P.J., Richter, Webber and Kahn, JJ.

---

* One of the amici contends that some recent scientific research has raised questions about the constellation of symptoms used to diagnose shaken baby

syndrome. Although some courts have relied on these research developments (*see e.g. People v Bailey*, 144 AD3d 1562 [4th Dept 2016]), the procedural context of those cases is quite different from this matter. On appeal, respondents do not specifically argue that the court erred in not considering this research, or that a new trial is necessary. Nor do they contend that all of this research was presented to the fact-finding court.