■ In the Matter of MIRANDA HH. and Others, Children Alleged to be Abused and/or Neglected. ALBANY COUNTY DEPARTMENT OF CHILDREN, YOUTH AND FAMILIES, Respondent; THOMAS HH., Appellant. [914 NYS2d 760]—

Egan Jr., J. Appeal from an order of the Family Court of Albany County (M. Walsh, J.), entered October 2, 2008, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate respondent's children to be abused and/or neglected.

Respondent and the mother—married in 1998—are the parents of three daughters—April HH., Miranda HH. and Alexandria HH. (born in 1997, 1999 and 2002, respectively). Although respondent's and the mother's relationship was deteriorating by 2005, they continued to reside in the same household, with respondent being the primary caretaker of the children. In November 2006, the mother noticed that Miranda was masturbating excessively and, based on a prior incident of sexual abuse allegedly perpetrated on Miranda by a babysitter in 2001, became concerned that her daughter had, again, been sexually abused. The mother began to regularly ask Miranda if someone was touching her and, on April 12, 2007, Miranda informed her mother that respondent had touched her "pee-tail" while she was in the shower. Five days later, on the same date that respondent filed a petition seeking custody of the children, the mother brought Miranda to the police station, where Miranda disclosed two incidents of sexual abuse perpetrated on her by respondent.

Shortly thereafter, petitioner commenced this proceeding alleging that respondent abused and/or neglected his children. Following a fact-finding hearing that occurred between November 2007 and June 2008, Family Court found that respondent had abused Miranda and neglected April and Alexandria. Respondent now appeals, arguing that petitioner failed to estab-

lish a prima facie case of abuse and, accordingly, his motion to dismiss made at the close of petitioner's case should have been granted. Alternatively, respondent argues that he successfully rebutted the allegations in the petition.[1]

"In a Family Ct Act article 10 proceeding, petitioner bears the burden of proving abuse and/or neglect by a preponderance of the evidence" (*Matter of Telsa Z. [Rickey Z.—Denise Z.]*, 71 AD3d 1246, 1249 [2010] [citation omitted]; *see* Family Ct Act § 1046 [b] [i]). "A prima facie case of abuse 'may be established by evidence . . . (1) [of] an injury to a child which would ordinarily not occur absent an act or omission of [the] respondent[ ], and (2) that [the] respondent[ ] [was] the caretaker[ ] of the child at the time the injury occurred' " (*Matter of Jordan XX.*, 53 AD3d 740, 740 [2008], quoting *Matter of Philip M.*, 82 NY2d 238, 243 [1993]; *see* Family Ct Act § 1046 [a] [ii]). Culpability does not arise upon the mere showing of a prima facie case; rather, it "establishes a rebuttable presumption of parental culpability which the court may or may not accept based upon all the evidence in the record" (*Matter of Philip M.*, 82 NY2d at 246). Once a prima facie case is established, the burden "shifts to [the] respondent[ ] to rebut the evidence of parental culpability" (*id.* at 244; *see Matter of Jordan XX.*, 53 AD3d at 740-741).

To meet its burden, petitioner presented the testimony of Lisa Sciortino, a caseworker employed by petitioner, Francine Balmaceda, a licenced clinical social worker who counseled the mother and children, and Christina Hippchen, Miranda's third grade teacher. In addition, April and Miranda also testified prior to the close of petitioner's case.[2] Both Sciortino and Balmaceda testified that Miranda disclosed to them that respondent had touched her "pee-tail"—the area from where she urinates. Sciortino, who was present during the police interviews of Miranda, testified that Miranda revealed two incidents of sexual abuse—one when respondent touched her "pee-tail" while he was bathing her when she was approximately three or four years old, and a similar incident occurring sometime after Christmas

---

1. Respondent has failed to address Family Court's determination of neglect in his brief and, therefore, has abandoned any challenge with respect thereto (*see Country Club Partners, LLC v Goldman*, 79 AD3d 1389, 1390 n [2010]; *Kowalczyk v McCullough*, 55 AD3d 1208, 1210 n 2 [2008]).

2. Miranda's and April's testimony was unsworn, held in camera, outside the presence of respondent or the mother, but subject to cross-examination by counsel. "[T]his type of testimony taken at the fact-finding stage of a Family Ct Act article 10 proceeding is fundamentally different from *Lincoln* testimony and is not entitled to the protections afforded by *Lincoln*" (*Matter of Justin CC. [Tina CC.]*, 77 AD3d 207, 209 [2010]).

2006, but before her birthday in March 2007. After she was interviewed by police, Miranda signed a written statement in which she related two incidents of sexual abuse perpetrated on her by respondent—one occurring when she was "2 or 3 or 4" in the bathtub and one occurring when she was seven on the living room couch. Balmaceda testified that April disclosed that she had witnessed respondent touch Miranda on her "pee-tail." Balmaceda also testified that Miranda's frequent and public masturbation was behavior consistent with that demonstrated by other individuals she has counseled during similar sexual abuse situations. Hippchen testified that during the 2007 school year commencing in September, she noticed that Miranda would engage in inappropriate masturbation in the classroom, but that Miranda did not seem to be aware of what she was doing.

During her in camera testimony, Miranda disclosed that respondent had inappropriately touched her on three occasions—the first when she was approximately two or three years old in respondent's bedroom, the second when she was slightly older while in the bath, and the third in her bedroom. When asked how the touching made her feel, Miranda initially responded "unhappy," but then added that it was "relaxing too at the same time." April testified that when she was five or six years old, she observed respondent touch Miranda "in a bad way" through a partially-opened bedroom door.

To serve as the basis for a finding of abuse, the out-of-court statements of Miranda made to both Sciortino and Balmaceda "required corroboration by any other evidence tending to support their reliability" (*Matter of Brooke KK. [Paul KK.]*, 69 AD3d 1059, 1060 [2010] [internal quotation marks and citations omitted]). Along these lines, we note that "a relatively low degree of corroborative evidence is sufficient in abuse proceedings" (*Matter of Richard SS.*, 29 AD3d 1118, 1121 [2006] [internal quotation marks and citations omitted]; *see* Family Ct Act § 1046 [a] [vi]; *Matter of Justin CC. [Tina CC.]*, 77 AD3d 1056, 1057 [2010]; *Matter of Telsa Z. [Rickey Z.—Denise Z.]*, 71 AD3d at 1249). While respondent points to the various inconsistencies in Miranda's statements, including whether there were two or three incidents of sexual abuse and where in the home those incidents are alleged to have occurred, Miranda's out-of-court statements were "corroborated in key respects" (*Matter of Sabrina M.*, 6 AD3d 759, 761 [2004]), specifically by her consistent report that respondent touched her "pee-tail" at least twice, with one incident occurring in the bathtub. While "some corroboration can be provided through the consistency of a child's statements" (*Matter of Richard SS.*, 55 AD3d 1001, 1003

[2008] [internal quotation marks and citations omitted]), Miranda's out-of-court statements were further corroborated by her own in camera testimony (*see Matter of Justin CC. [Tina CC.]*, 77 AD3d at 1059; *Matter of Brandi U.*, 47 AD3d 1103, 1104 [2008]), and through the testimony of Balmaceda and Hippchen regarding Miranda's increased sexualized behavior (*see Matter of Tanya T.*, 252 AD2d 677, 678 [1998], *lv denied* 92 NY2d 812 [1998]; *Matter of Ashley M.*, 235 AD2d 858, 859 [1997]).

Family Court acknowledged that Miranda's in-court testimony was inconsistent with prior statements on certain minor points, but found that her testimony was not rendered incredible as a result, observing that, "rather, it suggests that she had sexual contact with her father many times." In this regard, we note that "the reliability of the corroboration, as well as issues of credibility, are matters entrusted to the sound discretion of Family Court" (*Matter of Justin CC. [Tina CC.]*, 77 AD3d at 1057), and we find that Miranda's out-of-court statements were sufficiently corroborated such that petitioner established a prima facie case of abuse. Accordingly, the burden shifted to respondent to rebut the presumption of parental culpability (*see Matter of Philip M.*, 82 NY2d at 246; *Matter of Jordan XX.*, 53 AD3d at 740-741).

In opposition to petitioner's case, respondent testified on his own behalf and called the mother, John Yuille, a forensic psychologist, and Amy Sangaline, a sexual abuse consultant. The mother testified that on April 12, 2007, Miranda disclosed the abuse to her, but that she did not immediately go to the police. She testified that, instead, she left the children in respondent's care while she went to work, after which she spent the entire night out drinking with friends. The mother conceded that it was not until three days later, on April 17, 2007—the date that respondent filed a petition for custody—that she brought the children to the police station with respect to the allegations of abuse disclosed to her by Miranda. Finally, with respect to Miranda's allegations of sexual abuse, the mother admitted to telling April that if they did not go to the police station respondent would get custody.

Through Yuille's testimony respondent attempted to discredit the method by which Miranda was interviewed at the police station, giving particular emphasis to the fact that such interviews were not videotaped. Additionally, Yuille highlighted the lack of detail and inconsistencies in Miranda's various recollections, theorizing that such inconsistencies in a child's statements are indicative that the abuse did not happen, the abuse did happen

and the child is unwilling to provide details, or the child is unable to provide details because he or she is unable to express himself or herself. Yuille opined that, in some instances, a child's recollection of events may blend the common features of a number of separate incidents while dropping out the minor differences. Yuille added that a child's spontaneous reference to a feeling he or she had during the incident would be indicative of a real experience. Yuille also noted that Miranda's behavior in masturbating could be explained by other factors, aside from sexual abuse, including anxiety, substance abuse or brain damage.

Sangaline, who interviewed the mother and children shortly after the sexual abuse report was filed, reported that Miranda first disclosed that respondent "touched [her] in a priv[ate] spot" when she was two or three years old, and then again when she was six or seven, the latter incident occurring in the living room. In a second interview, Miranda disclosed that respondent had touched her on three separate occasions. Finally, respondent denied ever having inappropriately touched Miranda, and testified to, among other things, the mother's alcohol relapse shortly before the sexual abuse allegations, and to specifically overhearing the mother encouraging Miranda to "say that [respondent] touched you, you need to tell me he touched you, say that he touched you."

The attorney for Miranda and April then presented the testimony of, among other witnesses, Eileen Treacy, a psychologist, who testified about "confabulation" in sexual abuse cases, "when a memory is implanted" and is not an independent recollection of the event. Treacy explained that it was not unusual for victims of sexual abuse to both love and hate their abuser, as is the case with Miranda, and that in coached cases of abuse—one where the abused child is instructed what to say by the parent alleging the abuse—the child tends to express only hate for the alleged abuser. Treacy opined that Miranda's willingness to visit with respondent and to blame the mother for falsely informing the court that she had no desire to do so was evidence that this was not a coached case. Treacy also opined that excessive public masturbation indicates that a child may be "over-sexualized," and that Miranda's spontaneous description of respondent's touch as "relaxing" is a positive sensory detail that would enhance her level of conflict in disclosing the abuse.

In its determination, Family Court acknowledged the mother's possible ulterior motives for disclosing that Miranda had been sexually abused, and took note of her previous untruths, including her attempt to manipulate a drug test. However, Family

Court found that in the context of the testimony provided by Yuille and Treacy, both of whom stressed the significance of spontaneity and sensory detail in evaluating sexual abuse cases, Miranda was truthfully recalling incidents that she had actually experienced rather than "reconstructing memories of events that didn't actually happen." Family Court further found that respondent's testimony denying the allegation of abuse was not credible. In according the appropriate deference to Family Court's findings, and in taking into consideration all the circumstances, we find that Family Court's conclusion that Miranda was abused and that April and Alexandria are neglected is supported by a preponderance of the evidence (*see Matter of Brooke KK. [Paul KK.]*, 69 AD3d at 1061; *Matter of Brandi U.*, 47 AD3d at 1104 [2008]). In reaching this conclusion, we are satisfied that Family Court properly "weigh[ed] all the evidence in the record before making [its] determination" (*Matter of Ashley RR.*, 30 AD3d 699, 700 [2006]); thus, we do not agree with respondent's assertion that Family Court's decision relied too heavily on the opinion of Treacy or on Miranda's description of an incident of abuse as "relaxing."

Respondent's remaining contentions, including that Treacy was not formally certified as an expert witness (*see Matter of Kaitlyn R.*, 267 AD2d 894, 896 [1999]) and that the record lacks evidence indicating he touched Miranda for the purpose of sexual gratification (*see generally Matter of Olivia YY.*, 209 AD2d 892, 892 [1994]), have been reviewed and are similarly unavailing.

Spain, J.P., Kavanagh and McCarthy, JJ., concur. Ordered that the order is affirmed, without costs.