■ In the Matter of ALEXANDER F. and Others, Children Alleged to be Abused and/or Neglected. COLUMBIA COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; RADDAD I., Appellant, et al., Respondents. [919 NYS2d 246]—

Egan Jr., J.

Respondents Raddad I. (hereinafter respondent) and Stephanie F. (hereinafter the mother) are the married parents of two children, Amira I. and Destiny G. (born in 2009 and 2006, respectively). The mother has three other children from other relationships—Breanna F., Alexander F. and Caitlin H. (born in 2000, 2002 and 2007, respectively).* The mother has been incarcerated since mid-February 2009. Respondent and the children had been living with the children's maternal grandparents, respondents Pam H. and Pete H., at their residence in Columbia County, until a fire on February 15, 2009 forced them to move temporarily to various motels.

By mid-March 2009, respondent, Amira, Destiny, Breanna and Alexander were living in one room of a hotel in the City of Albany, and Caitlin, the maternal grandparents and their daughter Kimberly H. were living in an adjoining room. On March 23, 2009, respondent took Amira to the hospital after she refused to eat for several hours. Amira was treated and found to have bilateral subdural hematomas, bilateral infarctions of the brain, substantial loss of brain tissue and several rib fractures. The day following Amira's admission to the hospital, petitioner sought and was granted an order of temporary removal of the children from the home. Petitioner thereafter commenced this proceeding alleging the abuse of Amira and the derivative neglect of her siblings. After a fact-finding hearing, Family Court granted the petition as to all respondents except the mother. Respondent now appeals arguing that petitioner failed to establish a prima facie case of abuse and, accordingly, Family Court's findings of derivative abuse were also erroneous. Alternatively, respondent argues that he successfully rebutted the allegations in the petition.

" 'In a Family Ct Act article 10 proceeding, petitioner bears the burden of proving abuse and/or neglect by a preponderance of the evidence' " (*Matter of Miranda HH. [Thomas HH.]*, 80 AD3d 896, 897 [2011], quoting *Matter of Telsa Z. [Rickey Z.— Denise Z.]*, 71 AD3d 1246, 1249 [2010]; *see* Family Ct Act § 1046 [b] [i]). "A prima facie case of abuse 'may be established by evidence . . . (1) [of] an injury to a child which would ordinarily not occur absent an act or omission of [the] respondent[ ], and (2) that [the] respondent[ ] [was] the caretaker[ ] of the child at

---

* While, prior to the fact-finding hearing, respondent also claimed to be Caitlin's father, at the fact-finding hearing, he testified that only Destiny and Amira were his children.

the time the injury occurred' " (*Matter of Jordan XX.*, 53 AD3d 740, 740 [2008], quoting *Matter of Philip M.*, 82 NY2d 238, 243 [1993]; *see* Family Ct Act § 1046 [a] [ii]; *Matter of Brooke OO. [Lawrence OO.]*, 74 AD3d 1429, 1430 [2010], *lv denied* 15 NY3d 706 [2010]). "Upon presentation of such proof, the burden then shifts to the respondent to offer a reasonable and adequate explanation of how the child sustained the injury" (*Matter of Brooke OO. [Lawrence OO.]*, 74 AD3d at 1430 [citations omitted]; *see Matter of Miranda HH. [Thomas HH.]*, 80 AD3d at 897).

To meet its burden, petitioner presented the testimony of respondent, the maternal grandparents, Kimberly, John Waldman, a pediatric neurosurgeon, Melissa Mueller, a caseworker employed by petitioner, and the mother. Respondent denied injuring Amira and testified that the child was with him—and in his care—from the time he picked her up from the babysitter on the evening of March 20, 2009 until the afternoon of March 23, 2009, when he left the child in the maternal grandparents' care while he went to work. The maternal grandparents both testified that they had no contact with Amira between March 19 and 23 other than seeing her briefly during dinner on March 22 and, contrary to respondent's testimony, they did not care for Amira on March 23. Kimberly testified that she watched Amira on March 23 at 10:30 P.M. in the hotel room for approximately 20 minutes and, when respondent returned, she suggested that he bring the child to the hospital because she did not look well. Waldman, who treated Amira after she was admitted to the hospital, testified that Amira's brain injuries were caused by violent shaking, slamming against a hard surface or a deceleration injury, that the injuries sustained were due to the act or omission of a caregiver, and that at least one of the subdural hematomas occurred probably not more than three or four days prior to her admission to the hospital. Waldman also testified that, as a result of her injuries, Amira will most likely suffer from "severe neurological impairments for her lifetime" including, among others, weakness and limited control of her arms and legs and cognitive impairments. Mueller testified that Alexander told her that he overheard his grandparents say that respondent had hit Amira in the back of the head with the television remote and had also hit her on her back. Finally, the mother, who has been incarcerated since mid-February 2009, testified that she did not know how Amira sustained the injuries at issue. According deference to Family Court's credibility determinations (*see Matter of Justin CC. [Tina CC.]*, 77 AD3d 1056, 1057 [2010], *lv denied* 16 NY3d 702 [2011]), we find that this evidence established petitioner's prima facie case that

Amira was an abused child (*see* Family Ct Act § 1012 [e] [i]), and the burden of going forward to rebut this evidence shifted to respondent (*see Matter of Chaquill R.*, 55 AD3d 975, 976 [2008], *lv denied* 11 NY3d 715 [2009]; *Matter of Jordan XX.*, 53 AD3d at 740-741).

In this regard, we are unpersuaded that respondent's testimony that a babysitter watched Amira during the late afternoons through the evenings of March 18, 19 and 20, 2009 while he was working—inferring that the injuries did not occur while Amira was in his care—sufficiently rebutted petitioner's prima facie case. The record reflects that Amira was exclusively in respondent's care from the evening of March 20 until March 23, and, in any event, respondent testified that he did not notice anything out of the ordinary after picking Amira up from the babysitter's house on March 18, 19 or 20. Furthermore, contrary to respondent's argument, the statements made by Alexander to Mueller were sufficiently corroborated by Waldman's testimony regarding the injuries sustained to Amira (*see Matter of Gardner v Gardner*, 69 AD3d 1243, 1245 n 2 [2010]; *see generally Matter of Nicole V.*, 71 NY2d 112, 118 [1987]; *Matter of Miranda HH. [Thomas HH.]*, 80 AD3d at 898). In addition, because the nature of the abuse perpetrated on Amira "evidence[s] fundamental flaws in . . . respondent's understanding of the duties of parenthood" (*Matter of Michael N. [Jason M.]*, 79 AD3d 1165, 1167 [2010] [internal quotation marks omitted]; *see Matter of Rebecca FF. [David FF.]*, 81 AD3d 1119, 1120 [2011]), we decline to disturb Family Court's finding of derivative neglect. Finally, Family Court did not err in failing to rule on respondent's summary judgment motion, which was made after the fact-finding hearing and simply incorporated proposed findings of fact and conclusions of law.

Spain, J.P., Stein, McCarthy and Garry, JJ., concur. Ordered that the order is affirmed, without costs.