■ In the Matter of LEROY R., JR., an Infant. NEW YORK CITY ADMINISTRATION FOR CHILDREN'S SERVICES, Appellant, et al., Respondents. [922 NYS2d 370]—

Order, Family Court, Bronx County (Sidney Gribetz, J.), entered on or about August 31, 2010, which, following a hearing pursuant to Family Court Act § 1028, granted the application of respondent father to release the subject child to his custody on condition that the child not be left alone with the respondent mother, and subject to the father demonstrating to the "reasonable satisfaction" of petitioner Administration for Children's Services (ACS) that there are appropriate arrangements in place to ensure that the child will not be left alone with the mother, unanimously reversed, on the law and the facts, and the application denied, without costs.

A court, when analyzing an application for a child's return under section 1028, "must engage in a balancing test of the imminent risk with the best interests of the child and, where appropriate, the reasonable efforts made to avoid removal or continuing removal" (*Nicholson v Scoppetta*, 3 NY3d 357, 380 [2004]; *see* Family Ct Act § 1028 [a]). The court properly found that the child was at imminent risk of harm if returned to its mother, but improvidently exercised its discretion in ordering the conditional parole of the child to the father.

The record contains disturbing testimony and evidence as to the conduct of the subject child's father at the hospital where the child was born, and at the courthouse prior to the hearing. The father's graphic, profanity-laced death threats were directed at ACS staff and hospital personnel within hours of his son's birth.

On the first occasion, when he spoke on the phone to the ACS specialist assigned to the case, he called her a "bitch" and threatened to "fucking kill [her]" if she tried to remove the child from the hospital. The next day, the hospital social worker told the ACS specialist that the father had appeared at the hospital and had "made threats . . . that he wanted to kill everyone in the whole world and he also wanted to kill everyone in the hospital." The social worker said she "was so fearful that she locked the doors of her office."

Subsequently, on a motion to renew, ACS presented an affidavit of the child's case planner who had observed the father on the day of the hearing. The case planner heard the father say that he was going "to kill all the motherfuckers associated with

taking his son from him" and, referring to the ACS specialist, that he would "gut the pretty one like a fish." The case planner stated that the father "continued to make threats about how he was going to get all the workers on the case even the lawyers." The case planner also observed the father instructing the mother not to talk to her attorney who arrived for the hearing, and not to move off the bench as they waited to see the judge.

The father's conduct raises questions as to how ACS workers can make any determination regarding "appropriate arrangements" without coming into contact with the father, and thus putting themselves at risk. Further, such conduct by the father, described as "hostile and hateful" by the hospital social worker, suggests that the parole of the child to the father may pose as much of an imminent risk of harm to the child as returning him directly to his mother.

Accordingly, we deny the father's section 1028 application in its entirety since any doubt concerning the father's conduct must be resolved in favor of protecting the child (*see Matter of Kasheena M.*, 245 AD2d 231 [1997]). Concur—Gonzalez, P.J., Friedman, Catterson, Renwick and Abdus-Salaam, JJ.