Garry, J.
Appeals from two orders of the Family Court of *1108 Chemung County (Hayden, J.), entered May 3, 2012 and May 7, 2012, which granted petitioner’s applications, in two proceedings pursuant to Family Ct Act article 10, to adjudicate the subject children to be neglected.
In July 2011, respondent was caring for his paramour’s son (born in 2007) and daughter (born in 2008) in the City of Elmira, Chemung County, when the son suffered a fractured tibia. In August 2011, the paramour gave birth prematurely to twins fathered by respondent; the twins were hospitalized for several months thereafter in a neonatal intensive care unit (hereinafter NICU). Petitioner commenced the first of these proceedings in October 2011, alleging that respondent neglected the paramour’s son and daughter when the son was injured.[1] In December 2011, petitioner commenced the second proceeding, alleging that respondent neglected the twins while they were in the NICU After a consolidated fact-finding hearing, Family Court sustained both petitions. Respondent waived dispositional hearings and, upon his agreement to certain terms and conditions, the court issued orders of neglect. Respondent appeals from both orders.[2]
To support the claim that respondent neglected the son, petitioner was required to show by a preponderance of the evidence that he was harmed or placed at risk of harm by respondent’s failure to exercise a minimum degree of care (see Family Ct Act §§ 1012 [f] [i]; 1046 [b] [i]; Matter of Ciara Z., 58 AD3d 915, 917-918 [2009]; Matter of Victoria CC., 256 AD2d 931, 932 [1998]). Here, a prima facie case of neglect was established, as it was undisputed that respondent was caring for the son when he was injured, and petitioner demonstrated that the injury would not ordinarily have happened in the absence of respondent’s act or omission (see Family Ct Act § 1046 [a] [ii]; Matter of Philip M., 82 NY2d 238, 243-244 [1993]; Matter of Maddesyn K., 63 AD3d 1199, 1200 [2009]). The son’s treating orthopedic surgeon testified that his injury — a spiral tibial shaft fracture with bony fragments, including a large butterfly fragment — was consistent with a high energy accident requiring significant force, such as an ATV accident or downhill bicycle crash, and was not consistent with a “simple fall,” such as a fall down *1109 a typical flight of stairs.[3] The burden thus shifted to respondent to rebut the presumption of culpability by offering a reasonable and adequate explanation (see Matter of Philip M., 82 NY2d at 244; Matter of Seamus K., 33 AD3d 1030, 1031-1032 [2006]). Respondent offered no medical proof, and his testimony that he was half asleep or “dazing” on the couch when he heard thumps and discovered that the son had fallen down the stairs did not address the surgeon’s opinion regarding the high-energy nature of the injury. According deference to Family Court’s credibility assessments (see e.g. Matter of Stevie R. [Arvin R.], 97 AD3d 906, 907 [2012]), we conclude that respondent’s neglect of the son was proven by a preponderance of the evidence (see Matter of Steven M. [Stephvon O.], 88 AD3d 1099, 1101 [2011]; Matter of Maddesyn K., 63 AD3d at 1201-1202).
We reach the same conclusion as to Family Court’s determination that respondent neglected the twins. Determining whether a parent’s conduct constitutes neglect is based upon an objective analysis as to whether “a reasonable and prudent parent [would] have so acted, or failed to act, under the circumstances then and there existing . . . tak[ing] into account the special vulnerabilities of the child” (Nicholson v Scoppetta, 3 NY3d 357, 370 [2004] [citation omitted]; see Matter of Sayeh R., 91 NY2d 306, 315 [1997]; Matter of Rebecca KK., 51 AD3d 1086, 1087 [2008]). A physician specializing in neonatal intensive care medicine, who treated the twins during their four-month stay in the NICU, testified that the twins faced serious health problems resulting from their prematurity that posed long-term medical risks and required specialized care. She opined that parents of such vulnerable infants needed assistance in learning to care for them safely at home and, thus, should visit the NICU frequently to obtain hands-on training from medical personnel, especially when discharge was approaching. In particular, she testified that the twins’ caretakers would need training, patience and vigilance in handling their special needs — including, among other things, fussiness and difficulty in feeding — and identifying changes in condition that required medical assistance. Petitioner’s proof demonstrated that respondent did not visit the twins often, did not stay long when he did visit and rarely participated in such tasks as feeding them; during the last 15 days before their discharge, he visited the NICU only twice.
*1110 This physician and other hospital employees further testified about two episodes when respondent became so explosively angry in the hospital that hospital staff were frightened and intimidated and security personnel had to intervene. In the first of these incidents, respondent became upset over a change in the twins’ medical treatment and, for a period of approximately half an hour, shouted, made threats and swore at NICU personnel, refused to listen to their attempts to explain the treatment change, and had to be escorted into isolation. On the second occasion, respondent again shouted, swore, and issued threats; when security personnel then refused to permit him to enter the NICU, he summoned police. In December 2011, the twins’ treating physician wrote a letter describing her “grave concerns” over these incidents and respondent’s minimal contact with the twins, stating that she did not believe that they would be safe if discharged into his care and asking to have them placed in a foster home.[4]
As Family Court noted, respondent himself testified that he did not work because he was disabled by “ADHD, ADD and anxiety” and, thus, found it difficult to stay awake during the day or to maintain a regular schedule. When the court inquired as to how he would be able to care for the twins under such circumstances, he replied that he would have to “learn how to stay awake” and stated that there was “nothing special” about their medical needs. In view of the twins’ special vulnerability and the other evidence — including the unexplained high-energy injury suffered by the son while in respondent’s care — we are satisfied that petitioner established neglect by showing that the twins were in imminent danger of becoming impaired as a result of respondent’s failure to exercise a minimum degree of care (see Family Ct Act §§ 1012 [f] [i]; 1046 [b] [i]; Matter of Chakeeo B.-G., 273 AD2d 915, 916 [2000]; see also Matter of Leroy R., 84 AD3d 485, 486 [2011]).
Respondent’s remaining contentions, including his evidentiary challenges, have been examined and found to be without merit.
Mercure, J.E, Rose and Lahtinen, JJ., concur. Ordered that the orders are affirmed, without costs.

. The October 2011 petition did not name the twins as subjects but included an allegation that they were derivatively neglected. Family Court made no finding as to derivative neglect.

. Respondent is deemed to have abandoned any challenge to Family Court’s determination that he neglected the daughter, as he failed to address that issue in his brief (see Matter of Miranda HH. [Thomas HH.J, 80 AD3d 896, 897 n 1 [2011]).

. Based upon the history obtained at the time of the physical examination, the surgeon initially testified regarding a fall down just five steps. Upon further questioning, however, she clearly addressed a fall down a full flight, or 12 steps.

. Respondent’s claim that admission of this letter violated the best evidence rule is without merit, as its contents were proven by admission of the original writing (see Schozer v William Penn Life Ins. Co. of N.Y., 84 NY2d 639, 643 [1994]; Schardt v Posson, 41 AD3d 1135, 1136 [2007], lv denied 9 NY3d 814 [2007]). In any event, respondent had a full opportunity to cross-examine the physician regarding the letter’s contents.