Garry, J.
Appeals (1) from six orders of the Family Court of Clinton County (Lawliss, J.), entered December 17, 2012, January 4, 2013, February 11, 2013 and February 14, 2013, which, among other things, granted petitioner’s applications, in four proceedings pursuant to Family Ct Act article 10, to adjudicate the subject children to be abused and/or neglected, and (2) from the orders of protection issued thereon.
Respondent Amanda UU. (hereinafter the mother) has three sons (born in 2008, 2011 and 2012). The father of the youngest son is respondent Tyler W (hereinafter respondent), who began dating the mother in 2011 and moved in with her in June 2012. In May 2012, the middle son, then approximately five months old, began experiencing seizure-like symptoms. He was hospitalized at Champlain Valley Physicians Hospital in Clinton County after the first of these occurrences, which was described as “an acute life-threatening event,” but the underlying cause was not diagnosed. Following two more incidents, he was referred by his pediatrician to Fletcher Allen Health Care Center in Vermont, where he was diagnosed with a skull fracture and intracranial bleeding, and underwent surgery to drain fluid from his brain. Physicians at Fletcher determined that his injuries were indicative of abuse.
In June 2012, petitioner commenced the first two of these *1180 proceedings alleging that respondents had abused and neglected the two older sons. The children were removed with the mother’s consent and placed, over her objection, with relatives of their father. Following a fact-finding hearing, Family Court concluded that the middle son had been abused and neglected and the older son had been derivatively abused and neglected by both respondents. Immediately after the youngest son’s birth in November 2012, petitioner commenced the latter two of these proceedings alleging abuse and neglect based upon the same events. The youngest son was removed and placed, over respondent’s objections, with the relatives who were caring for the older sons. In January 2013, Family Court found that respondents had derivatively abused and neglected the youngest son and issued orders of protection restricting their contact with all three children. Respondents appeal from these orders of protection and from all of the orders of fact-finding and disposition.*
As relevant here, a child under 18 is abused when a parent or person who is legally responsible for the child’s care “creates or allows to be created a substantial risk of physical injury to such child by other than accidental means” (Family Ct Act § 1012 [e] [ii]; see Matter of Nicholas S. [John T.], 107 AD3d 1307, 1309 [2013], lv denied 22 NY3d 854 [2013]). “[A] prima facie case of child abuse or neglect may be established by evidence of (1) an injury to a child which would ordinarily not occur absent an act or omission of [the] respondent [ ], and (2) that [the] respondent [ ] [was] the caretaker[ ] of the child at the time the injury occurred” (Matter of Philip M., 82 NY2d 238, 243 [1993]; see Family Ct Act § 1046 [a] [ii]). While petitioner retains the ultimate burden to prove abuse and/or neglect by a preponderance of the evidence, the establishment of a prima facie case shifts the burden of going forward to the respondent to rebut the inference of culpability (see Matter of Philip M., 82 NY2d at 244; Matter of Brooke OO. [Lawrence OO.], 74 AD3d 1429, 1430 [2010], lv denied 15 NY3d 706 [2010]).
Here, petitioner offered the testimony of several physicians who treated the middle son. Their testimony and the medical records established that he experienced two or more traumatic events resulting in injuries that would not normally occur in such a young and immobile infant. A physician who treated the middle son at Fletcher testified that the first of these injuries *1181 occurred during a five-day period in May 2012 before the first “acute life-threatening event,” and that at least one more injury occurred at some time before he was admitted to Fletcher on June 8, 2012. Another physician testified that scans of the child’s brain taken after his admission to Fletcher revealed different stages of healing, indicating that he had been injured more than once. Finally, the medical testimony established that the damage to the child’s skull and brain was caused by significant force and could not have been accidentally caused in the manner suggested by respondents — that is, by slipping out of an infant swing a few inches above the floor, or being struck by another child with a “Super Soaker” water gun. Respondents concede that this evidence was sufficient to satisfy the first prong of the test by demonstrating that the child’s injuries would not have occurred in the absence of abuse by someone (see Matter of Keara MM. [Naomi MM.], 84 AD3d 1442, 1443 [2011]; Matter of Sidney FF., 44 AD3d 1121, 1122 [2007]; Matter of Zachary MM., 276 AD2d 876, 878 [2000]).
Nevertheless, respondents contend that petitioner did not establish a prima facie case of abuse against them, because other people who also cared for the middle son could have caused his injuries. We disagree. The testimony established that the mother was the primary caretaker for the two older sons until petitioner removed them from her custody. While respondent did not reside with the family throughout most of this time period and was rarely alone with the middle son, the testimony established that he spent about half his time in the mother’s residence after they began dating in late 2011, and participated in caring for the children when he stayed with her. Thus, Family Court properly found that he was a “[p]erson legally responsible” for the children’s care (Family Ct Act § 1012 [g]; see Matter of Ramsey H. [Benjamin K.], 99 AD3d 1040, 1042 [2012], lv denied 20 NY3d 858 [2013]; Matter of Alexandria X. [Ronald X.], 80 AD3d 1096, 1097-1098 [2011]).
As for other caretakers, although both the mother’s mother and respondent’s mother provided occasional care for the children during the weeks before the middle son’s injuries, Family Court expressly credited their testimony that they did nothing to harm him and did not know how the injuries occurred. The mother’s mother further testified that another relative was often present in her home when the children were there, and that she had seen this relative behave violently toward his own young child. However, she also stated that this relative had been alone with the middle son only once for a 10-minute period, and that the middle son showed no signs of distress there *1182 after. Based on this testimony, together with the medical evidence that the child had been injured on more than one occasion, the court eliminated this relative from consideration. Respondents suggested no other individuals who had cared for the children, and the court found that their explanations for the child’s injuries were inadequate and that their credibility was “extremely suspect.” According due deference to these assessments, we find that respondents did not rebut petitioner’s prima facie case against them and that a preponderance of the record evidence supports the conclusion that they were responsible for abusing and neglecting the middle son (see Matter of Matthew O. [Kenneth O.], 103 AD3d 67, 73-76 [2012]; Matter of Maddesyn K., 63 AD3d 1199, 1201-1202 [2009]; Matter of Seamus K., 33 AD3d 1030, 1032-1035 [2006]; compare Matter of Zachary MM., 276 AD2d at 881).
In view of the severity of the middle son’s injuries — which, according to his physicians, could have caused his death and may result in permanent brain damage — as well as respondents’ refusal to take responsibility for them, the findings of derivative abuse and neglect with respect to the other two sons were proper (see Matter of Kayden E. [Luis E.], 111 AD3d 1094, 1095-1096 [2013], lv denied 22 NY3d 862 [2014]; Matter of Alexander F. [Raddad I.], 82 AD3d 1514, 1517 [2011]; Matter of Dylan TT. [Kenneth UU.], 75 AD3d 783, 784 [2010]). Finally, respondent’s challenges to the dispositional order as to the youngest son have been rendered moot by his consent to a subsequent order in a Family Ct Act article 6 proceeding filed by the custodial relatives addressing the issues of custody and visitation (see Matter of Dezerea G. [Lisa G.], 97 AD3d 933, 935 [2012]).
Lahtinen, J.E, Stein and Rose, JJ., concur. Ordered that the orders of fact-finding and disposition entered December 17, 2012, January 4, 2013 and February 11, 2013 are affirmed, without costs. Ordered that the appeals from the order of disposition entered February 14, 2013 and the orders of protection entered January 4, 2013 and February 14, 2013 are dismissed, as moot, without costs.

 The orders of protection expired by their own terms in July 2013. As a determination would not directly affect respondents’ rights, the appeal from these orders is moot (see Matter of Stephen N. [William O.], 105 AD3d 1109, 1109 [2013]).